872 P.2d 859

**Susan GANDY and Carl Gandy,
Plaintiffs–Appellees,**

v.

**WAL–MART STORES, INC.,
Defendant–Appellant.**

No. 21035.

Supreme Court of New Mexico.

March 31, 1994.

Cherpelis & Salazar, P.A., Timothy L. Salazar, Jeffrey S. Landers, Albuquerque, for defendant-appellant.

Kenneth R. Wagner & Associates, P.A., Kenneth R. Wagner, Phillip P. Baca, Albuquerque, for plaintiffs-appellees.

## OPINION

MONTGOMERY, Chief Justice.

The question is whether a common-law tort action for retaliatory discharge may be brought when the claimant alleges that she was discharged from her employment because she earlier sought relief against her employer under the New Mexico Human Rights Act, NMSA 1978, Sections 28–1–1 to – 15 (Repl.Pamp.1991). We hold that it may.

### I.

On July 14, 1988, Susan Gandy filed a discrimination complaint against her employer, Wal–Mart Stores, with the Human Rights Division of the New Mexico Department of Labor (the Division), charging that she was discriminated against because of her medical condition. On August 19, 1988, she was terminated from her position as a pharmacist at Wal–Mart, allegedly in retaliation for having

filed her discrimination complaint. She then filed a complaint with the Division for retaliatory discharge pursuant to Section 28–1–7(I), which prohibits any employer from "engag[ing] in any form of ... reprisal ... against any person who has ... filed a complaint ... under the Human Rights Act." Later, on December 20, 1990, Gandy filed an action in the district court against Wal–Mart and her supervisor for breach of contract and retaliatory discharge; she subsequently withdrew the Human Rights complaint. In its answer to the district-court complaint, Wal–Mart sought dismissal of the retaliatory discharge count and later filed a motion for summary judgment, raising the same issues as those addressed on this appeal. The court denied Wal–Mart relief on both occasions. The action proceeded to trial before a jury in November 1992, and the jury found for Gandy on her claim of retaliatory discharge and awarded $24,200 in compensatory damages and $80,000 in punitive damages. The court entered judgment against Wal–Mart in these amounts, and Wal–Mart appeals. We affirm.

## II.

The tort of retaliatory discharge was first recognized in New Mexico by our Court of Appeals as an exception to the traditional rule that an employee at will may be discharged without cause. *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613 (Ct.App.1983), *rev'd in part on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984). We very recently traced the history of *Vigil* and the tort of retaliatory discharge, including the requirement that the discharge contravene a "clear mandate of public policy" (which will most often be found in a legislative enactment), in *Michaels v. Anglo American Auto Auctions, Inc.*, 117 N.M. 91, 92, 869 P.2d 279, 280 (1994). *See also Gutierrez v. Sundancer Indian Jewelry, Inc.*, 117 N.M. 41, 47, 868 P.2d 1266, 1272 (Ct.App.1993), *cert. denied*, 117 N.M. 121, 869 P.2d 820 (1994).

■ Wal–Mart argues that the tort of retaliatory discharge cannot be grounded on violation of a public policy declaration embodied in a legislative enactment that provides its own remedial scheme, because the purpose of recognizing the tort is to provide a remedy where the employee is otherwise unprotected. *See Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1408 (D.N.M.1986) ("Where a remedy other than this tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action."). Wal–Mart also presses the related, but much broader, argument that the Human Rights Act provides an exclusive remedy for the rights it protects and therefore precludes tort claims with potentially overlapping relief. Accordingly, Wal–Mart asserts, Gandy's only option was to proceed under the Act and, since she did not exhaust the administrative remedies that the Act provides, she has no common-law tort remedy available to her. We address these arguments in turn, though in reverse order.

## III.

The Human Rights Act was enacted in 1969, 1969 N.M. Laws, ch. 196, §§ 1–15, to eliminate "unlawful discriminatory practice[s]," *id.* § 4(B) (presently compiled as § 28–1–4(A)(1)), and to create a comprehensive administrative scheme to facilitate adjudication of claims of discrimination, *id.* §§ 9–11 (presently compiled as §§ 28–1–10 to –12). *See Luboyeski v. Hill*, 117 N.M. 380, 383, 872 P.2d 353, 356 (1994). Section 28–1–10, which outlines the grievance procedure under the Act, provides: "Any person claiming to be aggrieved by an unlawful discriminatory practice, and any member of the commission who has reason to believe that discrimination has occurred, *may* file with the human rights division a written complaint...." (Emphasis added.)

Under NMSA 1978, Section 12–2–2(I) (Repl.Pamp.1988), entitled "Rules of construction," "the words 'shall' and 'will' are mandatory and 'may' is permissive." Based on this canon of statutory construction, the grievance procedure in the Act appears to be permissive and not mandatory. Wal–Mart's argument that the Act was meant to provide an exclusive remedy would be stronger if, for example, Section 28–1–10 stated, instead of the language quoted above, that "any person seeking to redress a violation of any of the

rights guaranteed by this Act *shall* file an action under this Act pursuant to the administrative procedures it provides." Or the New Mexico Legislature could have said something like: "No person who claims to be a victim of a violation of any of the rights guaranteed by this Act may pursue a remedy except as provided in this Act." *Cf. Carlson v. Green,* 446 U.S. 14, 19–21, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980) (holding that remedial scheme afforded by Federal Tort Claims Act was not exclusive absent "explicit congressional declaration" that it was). It is not uncommon for our legislature to include such language in its enactments. *See, e.g.,* NMSA 1978, § 52–1–6(E) (Repl.Pamp.1991) ("The Workers' Compensation Act provides exclusive remedies.");[1] NMSA 1978, § 41–11–1(H) (Repl.Pamp.1989) ("No person may seek relief in a civil claim against a licensee or a social host for injury or death or damage to property which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section."); NMSA 1978, § 41–4–17 (Repl.Pamp.1989) ("The Tort Claims Act shall be the exclusive remedy....").

█ Although we acknowledge that legislative silence is at best a tenuous guide to legislative intent, *see Torrance County Mental Health Program, Inc. v. New Mexico Health & Envtl. Dep't,* 113 N.M. 593, 598, 830 P.2d 145, 150 (1992), the fact remains that there is no language in the Human Rights Act stating that its remedies are intended to be exclusive. Absent such language, we decline to infer a legislative intent to preempt tort claims unless such intent is clearly demonstrated by the comprehensiveness of the administrative scheme and the completeness of the remedy it affords. *Cf. Wright v. City of Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 424, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987) (holding that administrative scheme in Brooke Amendment

to Housing Act does not provide exclusive remedy precluding claim under 42 U.S.C. § 1983 because Court was "unconvinced ... that [defendant] has overcome its burden of showing that 'the remedial devices provided in [the Housing Act] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.'" (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981))).

Although the Human Rights Act provides an efficient, sensible, and comprehensive scheme for remedying violations of the rights it protects, *see* §§ 28–1–10 to –12 (relating, respectively, to procedures for grievances, hearings, and enforcement), the remedies it affords differ from those potentially available under the tort of retaliatory discharge. For example, attorney's fees are recoverable under the Act, *see* §§ 28–1–11(E) (allowing award of "actual damages ... and ... reasonable attorney's fees"), 28–1–13(D) (same), but generally are not recoverable in a tort action, *see, e.g., Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) ("New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees."). Punitive damages are sometimes recoverable in tort actions but are not recoverable under the Human Rights Act.[2] *See* §§ 28–1–11(E), 28–1–13(D); *Behrmann v. Phototron Corp.,* 110 N.M. 323, 328, 795 P.2d 1015, 1020 (1990) (construing damages provision of § 28–1–13: "*actual damages* is synonymous with compensatory damages and ... compensatory damages are exclusive of punitive damages"). Because the language of the Act is permissive and contains no declaration that the remedies it provides are exclusive, and because the remedies provided in the Act are

---

1. We do not mean to imply that such a broad declaration will always be conclusive of the kind of question before us today. We recently held that the declaration in the Workers' Compensation Act quoted in the text did not preclude a common-law tort action for retaliatory discharge when a worker was terminated for filing a worker's compensation claim. *See Michaels,* 117 N.M. at 93–94, 869 P.2d at 281–282.

2. Wal–Mart does not challenge the propriety of the punitive damages awarded in this case; it challenges only the availability of a retaliatory discharge action to redress a claim of termination as reprisal for filing a complaint with the Human Rights Division.

not the same as the remedies available in a tort action for retaliatory discharge, we hold that the legislature did not intend the Act's remedies to be exclusive. *See Wright,* 479 U.S. at 425, 107 S.Ct. at 771 (language of statute and completeness of remedial mechanisms must "raise a clear inference" that another cause of action is precluded).

Thus, because the Human Rights Act does not provide an exclusive remedy, exhaustion of administrative remedies under the Act is not a prerequisite to proceeding with an independent tort claim:

> Compliance with the grievance procedure of the NMHRA is a prerequisite to suit under this Act. *Jaramillo v. J.C. Penney Co.,* 102 N.M. 272, 694 P.2d 528 (Ct.App. 1985). However, the requirement that administrative remedies for employment discrimination claims recognized by statute be exhausted does not prevent an employee from filing a complaint based on a common law tort without first resorting to such administrative remedies.

*Phifer v. Herbert,* 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993). *See also State ex rel. Norvell v. Arizona Pub. Serv. Co.,* 85 N.M. 165, 170, 510 P.2d 98, 103 (1973) (" 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." (quoting *United States v. Western Pac. R.R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956))).

**IV.**

■ We next address Wal–Mart's argument that the tort of retaliatory discharge cannot be founded on a declaration of public policy embodied in a legislative enactment that provides its own remedial scheme. We begin by noting that this position contradicts the explicit language in *Vigil* and *Shovelin v. Central New Mexico Electric Cooperative,* 115 N.M. 293, 850 P.2d 996 (1993). The Court of Appeals in *Vigil* discussed a number of different types of legislative declarations that could provide the public policy basis for the tort of retaliatory discharge, including "one category [where] we find legislation which not only defines public policy, but also

provides a remedy.... [T]he Human Rights Act, dealing with discriminatory practices, falls within this category." 102 N.M. at 688–89, 699 P.2d at 619–20 (citation omitted). In *Shovelin,* this Court stated that a legislative enactment such as the Human Rights Act may furnish the public policy statement underlying the tort, notwithstanding the fact that the enactment contains its own remedial scheme. 115 N.M. at 303, 850 P.2d at 1006 (noting Human Rights Act as example of legislation providing "[a] clear mandate of public policy sufficient to support a claim of retaliatory discharge" even though it "provide[s] a remedy for a violation of that policy").

■ Wal–Mart relies on *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 106 N.M. 19, 738 P.2d 513 (1987), and *McGinnis v. Honeywell, Inc.,* 110 N.M. 1, 791 P.2d 452 (1990), for the proposition that the tort of retaliatory discharge will not lie where an employee is protected against wrongful discharge by another cause of action (in those cases, breach of an employment contract). We agree with Wal–Mart's position to the extent it intimates that a plaintiff cannot recover twice for the same harm—once under the employment contract (or the Human Rights Act, as the case may be) and again under the tort: "It is clear that McGinnis cannot recover more than one compensatory-damage award[.]" *Id.* at 8, 791 P.2d at 459 (holding that because plaintiff recovered compensatory damages on breach of contract award, " 'the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable.' " (quoting *Silva,* 106 N.M. at 21, 738 P.2d at 515)). The holding in *Silva* echoes this concern: "The ... issue on appeal is whether the trial court erred in instructing the jury that they could find either a breach of contract or retaliatory discharge, but not both. We hold that the instruction given was not erroneous." 106 N.M. at 21, 738 P.2d at 515.

■ Both the Human Rights Division and the judicial system have procedures available to dismiss or stay proceedings in order to avoid a double recovery or duplicative proceedings. The director of the Division has discretion to dismiss a complaint

when a parallel action has been filed in district court or to abstain from determining whether a complaint is supported by probable cause unless and until the plaintiff withdraws her district-court complaint. *Cf.* §§ 28–1–10(B), (C), (F) (granting director broad discretion, including power to dismiss complaint for lack of probable cause, or to forward it to Human Rights Commission for hearing, or to attempt to resolve it through conciliation). Likewise, under the doctrine of *primary jurisdiction district courts* have discretion to abstain from hearing a case that has been brought simultaneously before an administrative tribunal, especially when the tribunal is considered to have special expertise in resolving the type of dispute involved. *See Norvell,* 85 N.M. at 170, 510 P.2d at 103 (The doctrine of primary jurisdiction " 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' " (quoting *Western Pac. R.R.,* 352 U.S. at 63–64, 77 S.Ct. at 165)); 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.1 (3d ed. 1994) ("Primary jurisdiction is a doctrine used by courts to allocate initial decisionmaking responsibility between agencies and courts where ... overlaps and potential for conflicts exist.... If a court concludes that a dispute brought before the court is within the primary jurisdiction of an agency, it will dismiss [or, we add, stay] the action on the basis that it should be brought before the agency instead."). We are confident that an appropriate exercise of discretion by the district courts and the Human Rights Division, as well as a proper application of the doctrine of res judicata, will prevent double recovery and duplicative proceedings, thus assuaging the concerns expressed in *Silva* and *McGinnis.* Accordingly, we agree with the statement in *Vigil* and reaffirm the statement in *Shovelin* that the tort of retaliatory discharge may be based on a violation of one of the public policy mandates set out in the Human Rights Act.

For the foregoing reasons, we hold that the remedies provided in the Human Rights Act are not exclusive and that the tort of retaliatory discharge can be founded on a violation of Section 28–1–7(I) of the Act. Accordingly, the judgment of the trial court is affirmed.

**IT IS SO ORDERED.**