2004-NMCA-085

94 P.3d 813

**Willie A. VIGIL, Plaintiff–Appellee,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, a New Mexico business corporation, and Lex Smuts, Defendants–Appellants.**

No. 23,842.

Court of Appeals of New Mexico.

May 13, 2004.

Certiorari Denied, No. 28,719,
June 30, 2004.

Linda Hemphill, Linda Hemphill, P.C., Santa Fe, Michele Masiowski, Serra, Garrity & Masiowski, LLC, Santa Fe, for Appellee.

Robert C. Conklin, Thomas C. Bird, Jacqueline M. Woodcock, Keleher & McLeod, P.A., Albuquerque, for Appellants.

## OPINION

BUSTAMANTE, J.

{1} We granted Defendants' application for interlocutory appeal to clarify that a claim for retaliatory discharge is only available to at-will employees. Defendants—Public Service Company of New Mexico (PNM) and Lex Smuts, a former PNM employee—applied for interlocutory appeal after the district court denied their motion for summary judgment on Plaintiff's claims for retaliatory discharge, intentional infliction of emotional distress (IIED), civil conspiracy, and prima facie tort. We hold that an employee covered by a collective bargaining agreement cannot bring a claim for retaliatory discharge regardless of whether the employee's union refused to take his claim to arbitration. We also hold that Plaintiff's additional claims should not have survived summary judgment. Therefore, we reverse the district court's denial of summary judgment on all claims.

## BACKGROUND AND FACTS

{2} Plaintiff was employed by PNM as a mechanic and was covered by a collective bargaining agreement (CBA) when he was terminated because PNM determined he had falsely reported work done on a vehicle. Plaintiff contends that during the two years before he was terminated, he made a number of internal safety complaints and that he was discharged in retaliation for making these complaints. Plaintiff filed a grievance with his union, challenging the termination, but the union ultimately refused to arbitrate the matter. There is nothing in the record to indicate that Plaintiff challenged the union's action; instead, he sued PNM. Plaintiff's amended complaint alleged retaliatory discharge, civil conspiracy, tortious interference with contractual relations, and IIED. The case was twice removed to federal court, which decided that the tortious interference with contract claim and the IIED claim were preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1998), to the extent that they rested on PNM's conduct while investigating or adhering to termination policies.

{3} On remand to state district court, a separate cause of action for prima facie tort was later consolidated with the main case. Defendants moved for summary judgment on the remaining retaliatory discharge, civil conspiracy, IIED, and prima facie tort claims. The district court denied the motion, and this appeal followed.

## DISCUSSION

{4} Defendants argue that the district court should have granted summary judgment on Plaintiff's claims for retaliatory discharge, prima facie tort, IIED, and civil conspiracy. To survive summary judgment, a plaintiff must come forward with admissible evidence to establish each required element of the claim. *Blauwkamp v. Univ. of N.M. Hosp.*, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App.1992). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether [Defendant] was entitled to [judgment] ... as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted).

### Retaliatory Discharge

{5} Defendants argue that they were entitled to summary judgment on Plaintiff's retaliatory discharge claim on two grounds: first, they argue that because Plaintiff was not employed at will, he could not bring a claim for retaliatory discharge; second, they argue that Plaintiff has not satisfied the requirements for such a claim. In *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.*, 106 N.M. 19, 21, 738 P.2d 513, 515 (1987) (*Silva I*), our

Supreme Court held that the judicially created retaliatory discharge action is a "narrow exception to the terminable at-will rule." More recently, in *Silva v. American Federation of State, County & Municipal Employees*, 2001–NMSC–038, ¶ 7, 131 N.M. 364, 37 P.3d 81 (*Silva II*), our Supreme Court reaffirmed that the tort of retaliatory discharge constitutes an exception to the doctrine of at-will employment.

{6} In *Silva II*, the Court, responding to a certified question from the Tenth Circuit, held that the rule that only at-will employees are allowed to pursue actions for retaliatory discharge had not been altered by the holding of *Gandy v. Wal–Mart Stores, Inc.*, 117 N.M. 441, 872 P.2d 859 (1994), which held that an at-will employee could bring a claim for retaliatory discharge in addition to a statutory claim under the Human Rights Act, NMSA 1978, §§ 28–1–1 to –15 (1969, as amended through 2003). *Silva II*, 2001–NMSC–038, ¶ 21, 131 N.M. 364, 37 P.3d 81.

{7} Relying on cases from other jurisdictions, Plaintiff argues that this Court should expand the tort of retaliatory discharge to include an exception for employees covered by CBAs whose unions decline to represent them in arbitration proceedings against their employers. This Court, however, is constrained by the Supreme Court precedent articulated in *Silva I* and *Silva II*. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002–NMSC–029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (stating that the Court of Appeals remains bound by Supreme Court precedent). As Defendants point out, Plaintiff could have pursued other causes of action when his union refused to pursue arbitration on his behalf. Accordingly, we reverse the district court's denial of Defendants' motion for summary judgment on Plaintiff's claim for retaliatory discharge. In light of our holding, we do not reach the issue of whether Plaintiff satisfied the requirements of the tort.

### Prima Facie Tort

■ {8} Defendants argue that the evaluation of Plaintiff's prima facie tort claim is inextricably intertwined with consideration of the terms of the CBA and that, consequently, this claim is preempted by federal law. They also argue that Plaintiff cannot satisfy the elements of the claim.

{9} In *Kerschion v. Public Service Company of New Mexico*, 2002–NMCA–045, ¶ 6, 132 N.M. 119, 45 P.3d 59, this Court observed that Section 301(a) of the LMRA "bears a preemptive effect upon claims raised in state court that require the interpretation or application of a collective-bargaining agreement." In holding that the LMRA not only preempts state breach of contract claims, but also tort claims, the United States Supreme Court explained, in *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), that the relevant question in determining when a claim is preempted is whether the claim "would frustrate the federal labor-contract scheme established in § 301." *Id.* at 209, 105 S.Ct. 1904. The purpose of that scheme, the Court emphasized, was to ensure uniformity in the resolution of labor contract disputes. *Id.* at 210–11, 105 S.Ct. 1904. Thus, the Court concluded, when the evaluation of a "tort claim is inextricably intertwined with consideration of the terms of the labor contract," the state claim is preempted. *Id.* at 213, 105 S.Ct. 1904.

■ {10} Defendants argue that Plaintiff's prima facie tort claim is so intertwined. "The elements of a prima facie tort ... are (1) an intentional, lawful act, (2) committed with the intent to injure the plaintiff, (3) causing injury to the plaintiff, and (4) the absence of justification for the injurious act." *Padwa v. Hadley*, 1999–NMCA–067, ¶ 24, 127 N.M. 416, 981 P.2d 1234. Defendants contend that to establish this claim, Plaintiff would be required to demonstrate that his termination was for reasonable cause, as required by the CBA, in order to demonstrate that Defendants committed an intentional lawful act. Such a demonstration, Defendants argue, would require an interpretation of the CBA and is preempted by federal law. Plaintiff argues in response that the meaning of the CBA is not in dispute, and thus the prima facie tort claim is not inextricably intertwined with the terms of the contract and can be brought in state court.

{11} As our Supreme Court wrote in *Self*, 1998–NMSC–046, ¶ 9, 126 N.M. 396, 970 P.2d 582, "Section 301 does not preempt all employment disputes involving unionized workers." Instead of depending on "the nature of the employment relationship," the preemption question "focuses on the nature of a plaintiff's claims." *Id.* Indeed, the United States Supreme Court made clear in *Lueck* that congressional intent was not "to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 212, 105 S.Ct. 1904.

{12} The basis of Plaintiff's prima facie tort claim was that "PNM, through its supervisors, intentionally chose courses of action in connection with Plaintiff's termination" that it knew would harm Plaintiff. Plaintiff argues that this claim focuses on Defendants' motivation and conduct, not on whether the termination violated the CBA. We are not persuaded by this argument. Although Plaintiff urges us to conclude that his prima facie tort claim is not preempted because the federal court determined other of Plaintiff's claims were not preempted, we do not agree that the federal district court's ruling on other claims is applicable to this one.

{13} Relying on *Albertson's, Inc. v. Carrigan*, 982 F.2d 1478, 1482 (10th Cir.1993), the federal district court ruled that, to the extent that a tort claim rests on PNM's conduct while investigating or adhering to termination policies, it is preempted by federal law. Plaintiff argues that an analysis of the lawfulness of Defendants' action is unnecessary because the focus of the analysis should be on whether Defendants intentionally "set up Vigil and terminated him." We disagree. An analysis of Plaintiff's claim that Defendants intended to harm him when they lawfully terminated him by sabotaging his work would require us to determine whether the termination was lawful or whether it constituted a bad faith breach of an employment contract. This analysis would, in our view, frustrate congressional intent to ensure uniformity in the resolution of labor contract disputes.

{14} Accordingly, we hold that the prima facie tort claim is inextricably intertwined with the CBA and is preempted by federal law. Therefore, we reverse the district court's denial of Defendants' motion for summary judgment on this claim. In light of this holding, we do not address whether Plaintiff fails to state a claim for prima facie tort.

## Intentional Infliction of Emotional Distress

{15} The federal district court, citing *Carrigan*, 982 F.2d at 1482, ruled that "insofar as Plaintiff's IIED claim is based on Defendant's actions in conducting its investigation or in adhering to its termination policies, it is likewise preempted by § 301." As Plaintiff points out, however, the court went on to state that Plaintiff's IIED claim was not preempted to the extent that it was associated with his retaliatory discharge claim.

{16} On appeal, Defendants argue only that Plaintiff cannot satisfy the requirements for an IIED claim, and Plaintiff responds that his IIED claim, based on conduct associated with his retaliatory discharge claim (that he was fired for reporting safety violations), satisfies the requirements. However, as we explained earlier, causes of action under the LMRA for employees covered by CBAs and causes of action for at-will employees for retaliatory discharge are alternative proceedings for wrongful discharge in New Mexico, which depend on the employment status of the employee.

{17} Therefore, in light of our holding that Plaintiff, as an employee covered by a CBA, cannot state a claim for retaliatory discharge, he cannot base an IIED claim on conduct associated with retaliatory discharge because such a claim is not available to him. *See Silva II*, 2001–NMSC–038, ¶ 12, 131 N.M. 364, 37 P.3d 81; *Silva I*, 106 N.M. at 21, 738 P.2d at 515 (stating that the principle that the tort of retaliatory discharge is " 'unnecessary and inapplicable' when the employee is protected from wrongful discharge by an employment contract"). In this case, Plaintiff's remedies for wrongful discharge are governed by the CBA that sets forth the terms of his employment, and a claim for IIED predicated on a failure to comply with the CBA would be preempted by Section 301

of the LMRA. *See Carrigan,* 982 F.2d at 1482 (stating that claims requiring an analysis of what a CBA permitted were preempted).

{18} Accordingly, we do not reach the issue of whether there was evidence to support each element of an IIED claim. Instead, we hold that because Plaintiff cannot bring a claim for retaliatory discharge, he cannot state an IIED claim based on conduct associated with retaliatory discharge, and we hold that summary judgment should have been entered on this claim.

### Civil Conspiracy

{19} Defendants argue that Plaintiff's civil conspiracy claim fails, first, because Plaintiff has not shown that an independent unlawful act was carried out pursuant to the conspiracy, and, second, because Plaintiff has not demonstrated sufficient facts to show a conspiracy existed.

{20} To establish civil conspiracy, a plaintiff must demonstrate the following: "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Ettenson v. Burke,* 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (internal quotation marks and citation omitted). *Ettenson* states that "[a] civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own," and that "[w]ithout an actionable civil case against one of the conspirators . . . an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Id.* Thus, a conspiracy claim fails as a matter of law when no actionable civil case exists against the defendants.

{21} In his amended complaint, Plaintiff alleged that Defendant Smuts conspired with others to wrongfully deprive Plaintiff of his employment. In light of our holding that Plaintiff's claim for retaliatory discharge fails, his civil conspiracy claim based on wrongful discharge also fails. In addition, because we hold that Plaintiff's other claims—for IIED and prima facie tort—also fail, we hold that Plaintiff has not demonstrated any basis for a civil conspiracy claim.

### CONCLUSION

{22} We hold that Plaintiff has not met his burden of showing the existence of disputed material facts on any of his claims. Plaintiff's claim for retaliatory discharge fails because Plaintiff was not an at-will employee; his prima facie tort claim fails because it is inextricably intertwined with the CBA and is thus preempted by federal law; his IIED claim based on retaliatory discharge fails because he cannot state a claim for retaliatory discharge; and finally, his civil conspiracy claim fails because he has not shown that an underlying wrong existed. Accordingly, we hold that summary judgment should have been granted on all claims, and we reverse the district court's denial of Defendants' motion for summary judgment.

{23} **IT IS SO ORDERED.**

SUTIN and KENNEDY, JJ., concur.