Dennis J. **BEEGAN**, Appellant,

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION & PUBLIC FACILITIES, Anchorage International Airport, and Leo Von Scheben, Commissioner, in his Official Capacity, Appellees.**

No. S–12615.

Supreme Court of Alaska.

Oct. 31, 2008.

---

Jeffrey J. Jarvi, Law Office of Michael Stehle, P.C., Anchorage, for Appellant.

Brenda B. Page, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In January 2005 Dennis Beegan won a favorable judgment from the Alaska State Commission for Human Rights against the State of Alaska, Department of Transportation and Public Facilities (DOTPF) for retaliatory failures to hire. The Commission awarded him certain relief but no damages. Nine months later, Beegan filed a suit against DOTPF in superior court pursuing damages for the retaliatory conduct. The superior court dismissed Beegan's claims for back pay and noneconomic damages, reasoning that they were precluded by the doctrine of collateral estoppel. It also dismissed Beegan's whistleblower claim and his claim for retaliation in violation of public policy because it determined that AS 18.80 afforded Beegan adequate legal alternatives for his retaliation claims. Because we conclude that Beegan's back pay and noneconomic damages claims were not precluded by collateral estoppel or res judicata and that his claim for noneconomic damages was neither waived nor barred by the statute of limitations, we reverse the superior court's decision and remand for trial on these claims.

## II. FACTS AND PROCEEDINGS

Dennis Beegan was hired on a temporary basis as a maintenance electrician for DOTPF at Ted Stevens International Airport around November 11, 1996. He was fifty-four years old at the time. His first period of temporary hire lasted ninety days, and that term was extended twice. During this time period, two temporary maintenance electricians were upgraded to permanent positions; Beegan was not. Another permanent position became available shortly after Beegan's last temporary term ended. Although a conversation with his former supervisor led him to believe that he would be dispatched to interview for the position, this did not occur.

On December 29, 1997, Beegan filed his first complaint with the Commission alleging that DOTPF had discriminated against him on the basis of age. In August 1999 Beegan interviewed for another permanent electrician position at the airport but was rejected. Over the course of the next two years, Beegan continued to apply for permanent positions and was repeatedly rejected. He filed several more complaints with the Commission as a result. On December 18, 2002, the Commission consolidated his five complaints into one amended complaint.

A Commission hearing officer conducted a hearing on the matter between July 14 and July 18, 2003. The hearing officer issued

recommended findings of fact and conclusions of law, which a panel of three commissioners considered but declined to adopt. The commissioners instead filed a Proposed Decision and Order on August 2, 2004, inviting comment and further briefing from the parties.

The Commission published its final decision on January 26, 2005. It found that DOTPF had neither discriminated against Beegan on the basis of age nor retaliated against him for filing an age discrimination complaint in 1999. The Commission did find, however, that DOTPF's February 2000, November 2000, and May 2001 rejections of Beegan's applications for permanent employment were improperly motivated by retaliation for his human rights complaints. The Commission rejected Beegan's request for front pay along with his request to be hired for the next available electrician position at the airport. But the Commission did order DOTPF to interview Beegan for the next such position with unbiased personnel. Importantly, the Commission noted that Beegan's request for back pay damages had been withdrawn and it therefore did not address that claim.

Though he did not appeal this decision, Beegan did submit an affidavit to the Commission immediately after its decision was distributed. In his affidavit Beegan stated that his request for back pay damages had been withdrawn over his objection by Commission staff and that he had dutifully mitigated his damages. He requested that the Commission consider his back pay request and award him back pay. The Commission never responded to this request or the allegations in Beegan's affidavit.

Approximately nine months later, in October 2005, Beegan filed a pro se complaint against DOTPF in superior court, alleging age discrimination and retaliation for filing age discrimination complaints. Among other relief, he requested back pay damages and reinstatement. As an alternative to reinstatement, he requested damages for future wages and benefits. Beegan later secured representation and filed an amended complaint in February 2006, alleging age discrimination, retaliation for filing age discrimina-

tion complaints, violation of public policy, breach of the covenant of good faith and fair dealing, defamation, and interference with business relationships. He listed his damages as "both past and future economic and non-economic losses, including but not limited to loss of wages, injury to business reputation, mental anguish, humiliation, embarrassment, and inconvenience." He requested compensatory damages, attorney's fees, and any other relief found to be proper.

DOTPF moved to dismiss Beegan's amended complaint on grounds of sovereign immunity, statute of limitations, and lack of an employment contract. Beegan opposed the motion, abandoning his age discrimination and defamation claims but asserting (1) that DOTPF was collaterally estopped from denying it retaliated against him; (2) that DOTPF was liable for retaliation in violation of public policy; (3) that the statute of limitations was equitably tolled while the Commission proceedings were pending; and (4) that sovereign immunity was inapplicable. Beegan appended the Commission's decision and his January 2005 affidavit regarding back pay damages to his opposition motion.

The superior court considered these additional documents in its ruling and so converted DOTPF's motion for judgment on the pleadings to a summary judgment motion. It dismissed Beegan's claims in their entirety. Relevant to this appeal, the superior court ruled: (1) that Beegan was collaterally estopped from seeking damages in superior court because the Commission's unappealed decision resolved all issues associated with the retaliatory conduct, including damages, and (2) that Beegan's theory of a common law claim for retaliation in violation of public policy, along with his Whistleblower Act claim, failed because AS 18.80 provided him with adequate legal alternatives.

Beegan filed a motion for reconsideration arguing that the issue of back pay damages was not precluded because the Commission had explicitly declined to rule on it, and that his theory of common law retaliation in violation of public policy and his Whistleblower Act claim were viable. The superior court denied the motion for reconsideration and entered final judgment against Beegan on all

claims. Beegan appeals the dismissal of his claims for back pay and noneconomic damages under AS 18.80, his theory of common law retaliation in violation of public policy, and his Whistleblower Act claim.

## III. STANDARD OF REVIEW

We review the grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.[1] All reasonable inferences are drawn in favor of the nonmovant in this examination.[2] Questions of law such as the application of collateral estoppel, res judicata, and statutes of limitations are reviewed de novo.[3]

## IV. DISCUSSION

### A. Beegan's Claim for Back Pay Damages in Superior Court Is Not Precluded.

The superior court dismissed Beegan's request for back pay damages on collateral estoppel grounds. DOTPF agrees with the superior court's conclusion, additionally arguing that res judicata bars the claim. We conclude that neither doctrine precludes Beegan's back pay damages claim in superior court.

Res judicata and collateral estoppel prohibit parties from litigating points that have already been resolved: claim preclusion "prevents a party from suing on a claim which has been previously litigated to a final judgment,"[4] and issue preclusion prevents a party from pursuing an issue in a second

action that is "identical to [one] decided in the first action."[5] But Beegan's request for back pay damages, whether viewed as an issue or a claim, has never been resolved. The only reference to back pay in the Commission's decision is found in a footnote: "In Complainant's Brief on Relief to which Mr. Beegan is Entitled, Complainant states that Mr. Beegan is no longer seeking the remedy of back pay." The superior court concluded that because the Commission "determined *all* appropriate relief to award to Mr. Beegan as authorized by AS 18.80.130(a)(1)," his claims for back pay damages were barred by collateral estoppel. But the Commission neither decided the question of back pay damages nor issued a final judgment on the matter; indeed, it clearly acknowledged that no back pay damages claim was before it. And AS 18.80.145(b), which establishes a system of concurrent jurisdiction between the two forums,[6] provides that questions left unresolved by the Commission remain open before the superior court: "the decision of the commission is binding on the parties to the court action *as to all issues resolved in the hearing but not as to any issues not resolved in the hearing.*" (Emphasis added.)

DOTPF argues that this provision applies only to cases in which "a party pursues actions under AS 18.80 in court and in front of the Commission *at the same time* and the Commission intervenes in the court action." This argument is unavailing. As we made clear in *Johnson v. Alaska State Department of Fish & Game,* the application of AS 18.80.145 is not limited to situations in which the Commission requests deferral.[7]

1. *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n,* 152 P.3d 460, 465 (Alaska 2007).

2. *Id.*

3. *Id.; Law Offices of Steven D. Smith, P.C. v. Borg–Warner Sec. Corp.,* 993 P.2d 436, 443 (Alaska 1999).

4. *McElroy v. Kennedy,* 74 P.3d 903, 906 (Alaska 2003) (internal quotation marks omitted).

5. *Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991).

6. Other states have also established systems of overlapping jurisdiction in the context of human rights cases. *See, e.g., Gandy v. Wal–Mart Stores,*

*Inc.,* 117 N.M. 441, 872 P.2d 859, 862–63 (1994) (upholding concurrent jurisdiction of the Human Rights Division and the judicial system in the context of human rights claims); *Harrison County Bd. of Educ. v. Carson–Leggett,* 195 W.Va. 596, 466 S.E.2d 447, 449–51 (1995) (holding that a series of adverse decisions by the West Virginia Education and State Employees Grievance Board did not preclude a party alleging sex discrimination and unlawful retaliation from later pursuing her claims before the Human Rights Commission).

7. 836 P.2d at 907–08, 908 n. 16.

DOTPF maintains that even if the doctrine of collateral estoppel does not apply, Beegan's claim for back pay damages is nonetheless barred by res judicata because he had the opportunity to assert the back pay claim before the Commission but failed to do so. DOTPF relies on our decisions in *Sengupta v. University of Alaska*[8] and *McElroy v. Kennedy*[9] to support its position.

■ Res judicata prohibits a party not only from relitigating a resolved claim in a subsequent action, but also from asserting "any legal theory, cause of action, or defense which *could have been* asserted in that [prior] action."[10] As we stated in *McElroy*, when a party has previously had an opportunity to litigate an issue, "the fact that he chose not to, whether because of a strategic decision or ignorance or other reason, does not exempt him from the principles of *res judicata*"[11] in subsequent litigation. But in *Sengupta* we also noted the "well-established principle that no decision may constitute res judicata if the party against whom it is asserted has not had a full and fair opportunity to litigate his claims."[12] Here, the record reveals that Beegan did not have such an opportunity to litigate his back pay damages claim. Beegan has consistently maintained that his request for back pay damages was withdrawn over his objection by the Commission's human rights advocate who prosecuted the case, and DOTPF has provided no evidence to the contrary.

Moreover, the statutory structure supports Beegan's claim that he lacked control in the case before the Commission. A person alleging discrimination may file a complaint with the Human Rights Commission under AS 18.80.100(a). Commission staff then investigate the claim and determine whether substantial evidence exists to support it.[13] If the staff determines the claim is colorable, it attempts to remedy the problem via "conference, conciliation, and persuasion."[14] Failing that, the Commission's executive director may choose to refer the complaint for hearing, in which case she issues an accusation and presents it to the Commission.[15]

The Commission executive director and her staff control this process throughout: They may use discretion to eliminate claims at the mediation and prosecution stages. A Commission staff member drafts the accusations and presents the cases to the Commission. Indeed, the case against DOTPF was filed not by Beegan himself but by the Commission "ex rel."—on the information of—Beegan.[16] The prohibition against claim splitting presumes that one exercises control over which claims are brought. Because Beegan did not control his claim for back pay damages before the Commission, he did not have a full and fair opportunity to litigate it, and res judicata does not preclude him from pursuing this claim in superior court.

DOTPF also argues that Beegan's back pay claim fails because he did not appeal the Commission's decision, but DOTPF mischaracterizes Beegan's appeal to this court as a "conten[tion] that the Commission erred in its decision regarding the scope of appropriate relief." In fact, Beegan consistently ar-

---

8. 21 P.3d 1240 (Alaska 2001).

9. 74 P.3d 903.

10. *Id.* at 906 (emphasis added). Our cases have clarified that the "could have been asserted" test is limited to claims against a party arising out of the same transaction being litigated. The rule against claim splitting is " 'a conventional application of the doctrine of res judicata.' The rule against claim splitting provides that 'all claims arising out of a single transaction must be brought in a single suit, and those that are not become extinguished by the judgment in the suit in which some of the claims were brought.' " *Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 780 (Alaska 2002) (quoting *McDowell v. State*, 23 P.3d 1165, 1167 n. 9 (Alaska 2001) and *Osborne v. Buckman*, 993 P.2d 409, 412 (Alaska 1999)).

11. *McElroy*, 74 P.3d at 909 (internal quotation marks omitted).

12. 21 P.3d at 1253.

13. AS 18.80.110.

14. *Id.*

15. AS 18.80.120.

16. Ex rel. suits are "typically brought by the government upon the application of a private party ... who is interested in the matter." BLACK'S LAW DICTIONARY 621 (8th ed.2004).

gues in his briefing that the Commission never decided the question of back pay damages because the request was improperly withdrawn by Commission staff, not that the Commission erred in its decision on relief. Beegan appeals the superior court's determination that his back pay damages claim is precluded by the Commission's decision; he does not appeal the Commission decision not to address the claim. Because the Commission did not decide the question of back pay damages, there was no final order on back pay damages for Beegan to appeal.

As we explained in *Johnson*, Beegan was free to seek damages in superior court after having prevailed before the Commission: "[W]hen ... claimants before the Commission prevail, their claim does not merge into the favorable judgment. Rather, they are still free to bring subsequent action ... in superior court, because the remedies available in court are different than those available before the Commission."[17] Beegan's claims are subject to issue and claim preclusion analysis, but we have already determined that neither doctrine prohibits his back pay damages claim.

For the foregoing reasons, the superior court erred in dismissing Beegan's back pay damages claim.

### B. Beegan's Claim for Noneconomic Damages Is Neither Precluded nor Barred by the Statute of Limitations.

■ The superior court held that "the Commission's decision resolved all issues of liability and the entire scope of the appropriate relief to award, including damages." It reasoned that Beegan's claim for noneconomic damages under AS 18.80 in superior court was therefore precluded. But again, claims can only be precluded by collateral estoppel

or res judicata if the initial forum actually decided the question or if the party could have raised the question in the initial forum and did not. Here, the Commission did not evaluate Beegan's claim for noneconomic damages because it could not have done so: that remedy was unavailable to Beegan at the Commission level.[18] Our decision in *Johnson* is instructive.

In *Johnson*, a surf fisherman filed a complaint with the Commission on behalf of himself and other Alaska Native surf fishermen alleging that the Department of Fish and Game had racially discriminated against them.[19] They later sued the Department in superior court for the same conduct.[20] The *Johnson* plaintiffs were permitted to seek noneconomic damages in superior court after prevailing before the Commission because the two forums offered different remedies. "Indeed, when ... claimants before the Commission prevail, their claim does not merge into the favorable judgment. Rather, they are still free to bring subsequent action ... in superior court, because the remedies available in court are different than those available before the Commission."[21] Because noneconomic damages were not available to the fishermen at the Commission level, they could pursue these damages in superior court even after they had prevailed before the Commission:

> Under the Act, the Commission's powers to remedy violations of AS 18.80 are quite specific.... [T]he Commission's power to award money is limited to special damages or to money payments incident to equitable relief, that is, to damages for "direct, calculable pecuniary loss, such as back pay or housing expenses."

> Plainly, the remedial powers that th[e] statute grants to the superior court are broader than the specific powers that AS 18.80.130 grants to the Commission. In-

---

**17.** 836 P.2d 896, 907 n. 15 (Alaska 1991); *see also id.* at 909, 914.

**18.** *Id.* at 914 ("In all cases, however, the Commission's power to award money is limited to special damages or to money payments incident to equitable relief, that is, to damages for 'direct, calculable pecuniary loss, such as back pay or housing expenses.'" (footnote omitted)). The statute was amended in September 2006 to ex-

pressly prohibit the Commission from awarding noneconomic damages. *See* AS 18.80.130(a); ch. 63, § 6, SLA 2006.

**19.** 836 P.2d at 900, 903.

**20.** *Id.* at 903.

**21.** *Id.* at 907 n. 15, 914.

deed, the extraordinary difference between remedies available before the Commission and remedies available before the court provides the only rational reason for affording complainants' new action in superior court *after* they have prevailed before the Commission.[22]

This is the case here. As *Johnson* makes clear, the Commission was not empowered to award noneconomic damages to Beegan for AS 18.80 claims.[23] Beegan's claim for noneconomic damages before the superior court was thus not precluded by collateral estoppel or res judicata.

DOTPF finally contends that Beegan's claim for noneconomic damages fails for two other reasons: (1) because Beegan waived it before the superior court and (2) because it is barred by the statute of limitations. Neither contention has merit.

### 1. Beegan did not waive his noneconomic damages claim.

■ DOTPF concedes that Beegan pleaded noneconomic damages in his amended complaint but contends that he did not request them in relation to an AS 18.80 retaliatory failure to hire claim and therefore waived them. We disagree. In his amended complaint, Beegan pleaded noneconomic damages "[a]s a result of defendants' conduct." Among the allegations of "defendants' conduct" in paragraph eleven of the complaint is a statement that "Beegan was not hired for such a permanent maintenance electrician position at the airport . . . because he previously made complaints of age discrimination with the Alaska State Commission for Human Rights." This allegation precisely asserts the conduct on which an AS 18.80 retaliatory failure to hire claim rests,

and it suffices to raise the claim under the liberal pleading standard of Alaska Civil Rule 8(a).[24] Moreover, the superior court considered and ruled on Beegan's claim for damages under AS 18.80.

### 2. The statute of limitations does not bar Beegan's claim for noneconomic damages.

■ DOTPF also submits that Beegan's noneconomic damages claim is barred by the statute of limitations. Under AS 09.10.070, claims based on AS 18.80 must be brought within two years of the offending conduct.[25] Beegan did not file his claim in superior court until at least four years after the offending conduct occurred. His claim for noneconomic damages is therefore barred unless equitable tolling applies.

As we recognized in *Dayhoff v. Temsco Helicopters, Inc.*, "[t]he equitable tolling doctrine applies to relieve a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him." [26] We further explained that after answering this threshold question, three additional elements must be met for equitable tolling to apply: (1) pursuit of the initial remedy must give the defendant notice of the plaintiff's claim; (2) the defendant's ability to gather evidence must not be prejudiced by the delay; and (3) the plaintiff must have acted reasonably and in good faith.[27] On the threshold question, Beegan had more than one legal remedy available to him: he was entitled to proceed both before the Commission and the superior court.[28] And each of the three additional elements set out in *Dayhoff* has been met. First, DOTPF has had notice of Beegan's retaliatory failure to hire claim since he first presented it to the Com-

---

**22.** *Id.* at 914 (quoting *McDaniel v. Cory,* 631 P.2d 82, 88 (Alaska 1981)) (footnote omitted).

**23.** *Id.*

**24.** Alaska Civil Rule 8(a) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief the pleader seeks."

**25.** Beegan suggests that his claims may sound in contract rather than tort and that the statute of limitations may consequently be three years rath-

er than two. Regardless, he did not file his superior court suit until four to five years after the offending conduct, which is outside either allowable time period.

**26.** 772 P.2d 1085, 1087 (Alaska 1989).

**27.** *Id.*

**28.** AS 18.80.130(a)(1); AS 22.10.020(i).

mission in 1999. Second, although DOTPF asserts that it would be prejudiced if Beegan were allowed to pursue noneconomic damages because "witnesses have died or moved on, and memories have faded," DOTPF has known about Beegan's claim for years. As we stated in *Dayhoff*, "if evidence available when the employer first learned of the claim[ ] is no longer available, and the employer could have obtained or preserved the evidence, the current unavailability of the evidence will not support a finding of employer prejudice." [29] Finally, nothing in the record suggests that Beegan has acted unreasonably or in bad faith before the superior court or the Commission.

DOTPF nonetheless argues that equitable tolling should not apply in this case because "Beegan's administrative action was not dismissed or defective," relying on our decision in *Gudenau & Co. v. Sweeney Insurance*[30] to support its position. DOTPF also cites our decision in *Fred Meyer of Alaska, Inc. v. Bailey*: "Generally, equitable tolling applies when the plaintiff files an action in court after an administrative proceeding or initial court action is dismissed or proves unavailing." [31]

But Beegan's administrative action *did* prove unavailing. Despite success on some of his claims before the Commission, Beegan was not awarded noneconomic damages because they were not available to him before the Commission. His initial action tolls his subsequent one not because it was "dismissed," but because it was "unavailing" with respect to this form of relief.[32]

Our equitable tolling analysis in *Gudenau* relied on case law from the Ninth Circuit and California,[33] and decisions from those jurisdictions suggest that equitable tolling should apply here. For example, in *Daviton v. Columbia/HCA Healthcare Corp.*, the Ninth Circuit held that litigants who had prevailed on their administrative complaint for disability discrimination before the United States Department of Health and Human Services's Office of Civil Rights satisfied all the requirements for equitable tolling in their subsequent district court case against the same defendant for the same wrong.[34] The Ninth Circuit also concluded that litigants need not seek the same remedies before both forums in order for equitable tolling to apply.[35] And in *Collier v. City of Pasadena*, the court held that a plaintiff's successful workers' compensation claim equitably tolled the statute of limitations on his subsequent disability pension case based on the same injury.[36] Similarly, in *Tu–Vu Drive–In Corp. v. Davies*, the Supreme Court of California held that the statute of limitations on a plaintiff's subsequent damages claim was tolled by the previous and successful third-party claim for recovery of the seized property at issue.[37]

To deny equitable tolling here simply because Beegan succeeded before the Commission on some of his claims would place form

---

29. 722 P.2d at 1088 n. 7.

30. 736 P.2d 763, 768 (Alaska 1987).

31. 100 P.3d 881, 886 (Alaska 2004).

32. Several federal courts have come to a similar conclusion in an analogous context, holding that "pursuit of internal union remedies tolled the limitations period applicable to a hybrid suit under § 301 of the Labor Management Relations Act ... where the remedies pursued, although not capable of providing a union member with complete relief, were capable of providing some relief." James Lockhart, Annotation, *When Is Six–Month Limitations Period, Applicable to Employee's "Hybrid" Action Against Employer and Union Under § 301 of Labor Management Relations Act of 1947 (29 U.S.C.A. § 185), Subject to Tolling or Equitable Modification Due to Pendency of, or Employee's Pursuit of, Contractual or Internal Union Remedies?*, 17 A.L.R. FED.2D 523, § 32 (2007); *see also id.* § 33; *Robinson v. Cent.*

*Brass Mfg. Co.*, 987 F.2d 1235, 1243–44 (6th Cir.1993) (stating former employee's pursuit of union remedies equitably tolled subsequent suit against union in federal court because union remedies could have provided her some relief, though not complete relief).

33. 736 P.2d at 768.

34. 241 F.3d 1131, 1133–34, 1141–42 (9th Cir. 2001).

35. *Id.* at 1133, 1141.

36. 142 Cal.App.3d 917, 921, 935, 191 Cal.Rptr. 681 (1983).

37. 66 Cal.2d 435, 58 Cal.Rptr. 105, 426 P.2d 505, 506 (1967); *see also Elkins v. Derby*, 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81, 84 (1974).

over substance in light of the relevant statutory structure. Had Beegan filed before the two entities at the same time, it is quite likely that the superior court proceedings would have been stayed by operation of the statute [38] pending the Commission's decision, which would have put the parties in essentially the same position they are now. And the statutory structure could scarcely be more permissive in providing an aggrieved party with routes to relief. For instance, the statute provides that a human rights litigant may file a complaint with the Commission; [39] he may file a complaint in superior court; [40] he may file in both forums simultaneously; or he may bring the discriminatory practice to the attention of the Commission's executive director and encourage her to file a complaint. [41] This statutory structure indicates that the legislature intended to provide human rights litigants particular flexibility in pursuing relief. [42] Requiring human rights litigants to file before the superior court and the Commission simultaneously to preserve their rights in both forums, as DOTPF suggests, would introduce a rigid requirement into an otherwise permissive structure and could frustrate legislative intent. Such a requirement would have a particularly harsh effect on pro se litigants, like Beegan, and could cause superfluous filings in the superior court. [43]

The Supreme Court of California has articulated the general principle underlying the equitable tolling doctrine: "[I]f the defendant is not prejudiced thereby, the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursues one." [44] Our decisions have demonstrated the same general principle. [45] Beegan has met this standard and the test set forth in our case law.

Because Beegan filed his claim in superior court approximately nine months after the Commission issued its decision, and because his claim was equitably tolled during the pendency of the Commission proceedings, Beegan's noneconomic damages claim is not barred by the statute of limitations. [46]

38. AS 18.80.145(a) provides that "[i]f the commission certifies in writing to the court that it is presently investigating or actively dealing with the act, practice, or policy of the defendant giving rise to the cause of action, the court shall, at the request of the commission, defer proceedings for a period of not more than 45 days or such extended period as the court may allow." See also subsection (b) of this provision, which provides that "the decision of the commission is binding on the parties to the court action as to all issues resolved in the hearing but not as to any issues not resolved in the hearing."

39. AS 18.80.100(a) provides that "[a] person who is aggrieved by a discriminatory practice prohibited by this chapter may sign and file with the commission a written, verified complaint."

40. AS 22.10.020(i) states that "[a] person who is injured or aggrieved by an act, practice, or policy which is prohibited under AS 18.80 may apply to the superior court for relief." That said, the commission must be given an opportunity to intervene if it chooses, under AS 18.80.145(a): "When an action is brought under AS 22.10.020(i), the plaintiff shall serve a copy of the complaint on the commission. Upon timely application, the commission may intervene as a matter of right."

41. AS 18.80.100 provides that "the executive director may file a complaint in the manner provided in (a) of this section when a discriminatory practice comes to the attention of the executive director."

42. In an analogous context, other courts have concluded that civil rights statutes should be liberally construed to provide litigants flexibility in pursuing relief, particularly through the application of equitable tolling. *See Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir.1984) ("In view of the principle that Title VII [of the Civil Rights Act of 1964] is a remedial statute to be liberally construed in favor of victims of discrimination, we conclude that the thirty-day limitation of [U.S.C.] section 2000e–16(c) ... may be subject to equitable tolling in appropriate cases." (citations and internal quotation marks omitted)).

43. *See Elkins*, 525 P.2d at 88 ("If in order to avert loss of his rights, an injured party is forced to initiate proceedings with both the compensation board and a superior court, he brings onerous procedural burdens upon himself, his employer, and the already overtaxed judicial system.").

44. *Id.* at 84.

45. *See, e.g., Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989).

46. Beegan also contests the superior court's dismissal of his alternative claims based on retaliation in violation of public policy and the Whistle-

## V. CONCLUSION

The decision of the superior court is RE-VERSED and the case is REMANDED for determination of back pay and noneconomic damages.

blower Act. Because we hold that his claims for damages under AS 18.80 are not precluded, we need not reach these alternative theories.