901 P.2d 761

**Johanna BEAVERS, Plaintiff–Appellee,**

v.

**JOHNSON CONTROLS WORLD SERVICES, INC., and Arthur L. DaSilva, Defendants–Appellants.**

**No. 13610.**

Court of Appeals of New Mexico.

June 1, 1995.

Certiorari Denied July 12, 1995.

Bradford V. Coryell, Baca, Coryell, Gershon & Hall, P.A., Santa Fe, for defendants-appellants.

Roger V. Eaton, Eaton, Martinez & Hart, P.C., Albuquerque, for plaintiff-appellee.

### OPINION

DONNELLY, Judge.

In this case we consider the claims of Johnson Controls World Services, Inc. and Arthur L. DaSilva (Appellants) that the trial court erred in not dismissing Johanna Beavers' (Plaintiff's) prima facie tort claim because: (1) the New Mexico Workers' Compensation Act provides the exclusive remedy for Plaintiff's claim of emotional and mental distress, (2) the trial court applied an erroneous balancing test in determining that the prima facie tort claim should be submitted to the jury, and (3) the jury verdict awarding damages for a prima facie tort is not supported by substantial evidence. For the reasons discussed below, we affirm.

### BACKGROUND AND PROCEDURAL HISTORY

This is the second time this cause has been before this Court. Appellants' appeal from a judgment of the trial court awarding $76,000 damages resulting from the commission of a prima facie tort was reversed by another panel of this Court in *Beavers v. Johnson Controls World Services, Inc.,* 116 N.M. 29, 859 P.2d 497 (Ct.App.) (*Beavers I*), *cert. granted,* 115 N.M. 795, 858 P.2d 1274 (1993). This Court's prior decision held that Plaintiff's action, predicated on the claim of prima facie tort, should be dismissed because the facts underlying the action occurred prior to the time a cause of action for prima facie tort was recognized in *Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726 (1990). The Supreme Court granted *certiorari* in this case and reversed the Court of Appeals, holding that Plaintiff's prima facie tort claim should be applied retroactively. *See Beavers v. Johnson Controls World Servs., Inc.,* 118 N.M. 391, 881 P.2d 1376 (1994) (*Beavers II*). After deciding the retroactivity issue, the Supreme Court remanded the case back to this Court "for consideration of the other issues in [Appellants'] appeal." *Id.* at 393, 881 P.2d at 1378.

### FACTS

Plaintiff was employed by Pan Am World Services as a secretary. The corporation subsequently changed its name to Johnson Controls World Services, Inc. (Johnson). In 1987, after working for Johnson and its predecessor for approximately ten years, Plaintiff was assigned to work in DaSilva's office. At trial Plaintiff testified, among other things, that DaSilva, her supervisor, belittled and denigrated her to co-workers and that his conduct resulted in her becoming extremely depressed, suffering acute mental distress necessitating her hospitalization.

Among the several incidents that contributed to her hospitalization, Plaintiff testified that in October 1987 she attempted to repair an office photocopy machine. DaSilva saw Plaintiff working on the machine and DaSilva told her to call a repairman. Plaintiff called the repair company listed in the customer's manual for the photocopier, and following completion of the repair work the company billed the office for the service call. She gave the bill to DaSilva. When DaSilva saw the bill he became agitated and told her that

instead of calling an outside service repairman she should have gone through Johnson's purchasing department. DaSilva was told by his supervisors that the proper procedure had not been followed in getting the office machine repaired, and he was instructed to advise individuals in his department to follow correct procurement procedures in the future. Instead of admitting any responsibility for the problem, DaSilva assigned the blame to Plaintiff, informed her that he was very unhappy with her handling of the matter, that she had used poor judgment, and that she had not followed correct company procedure.

DaSilva directed that a memorandum to other employees in the department be prepared. DaSilva edited several different drafts of the memorandum before it was finalized and Plaintiff was required to retype each version. The memorandum stated that an employee in the department failed to follow correct company policy, pointed out that arranging for repairs on company machines was the exclusive responsibility of Johnson's procurement department, and directed that area construction superintendents in his division remind "employees that not following procedures reflects poorly on the Department and will not be condoned." Plaintiff presented evidence that following the incident involving the photocopy machine, DaSilva's attitude toward her changed. He no longer would say "hello" to her when he arrived at work in the morning, and that when he left the office he would not speak or inform her where he could be contacted or reached by others.

Plaintiff asked DaSilva for permission to schedule a vacation around the 1987 Thanksgiving holiday. A few days thereafter Plaintiff submitted a new leave slip requesting two additional days of vacation time. Under company procedure, requests for vacation time were required to be approved in writing. Although DaSilva orally indicated his consent, he never signed the necessary documentation as required by company rules. Because of the photocopier incident and DaSilva's blaming her for not following company procedure, Plaintiff became concerned about whether formal, written approval had

been given for her vacation. Several days prior to the time her vacation was scheduled to begin, Plaintiff asked her husband to contact DaSilva and find out if he had signed the authorization form. When her husband inquired concerning the matter, DaSilva looked at him, shrugged, and walked away without giving any response. Since DaSilva had failed to give his written approval for the requested leave, Plaintiff reported for work instead of leaving on vacation. When she arrived at the office she found that DaSilva had made arrangements for someone else to perform Plaintiff's duties on the dates in question. DaSilva asked her why she had come to work, and she said because he had not signed her leave slip. DaSilva then told her to resubmit her request so as to be effective the following day, and belatedly signed the document. Plaintiff became very upset and agitated over DaSilva's conduct.

Plaintiff told DaSilva that she wanted a transfer from his department. DaSilva told her that he would "send her back where she came from" and would see that she received a transfer. Plaintiff also testified that following her request for a transfer DaSilva began feigning illness when he saw her and that he told a personnel officer that he wanted her transferred because her presence in his division was making him physically ill. This statement by DaSilva was related to Plaintiff by a company representative.

After the October incident involving the photocopy machine, DaSilva began to denigrate Plaintiff and disparage her to others within the company offices. Kip Paskewich, a co-supervisor, testified that DaSilva was not receptive to being questioned and that he began to disparage Plaintiff to "anybody who would listen in that area." Paskewich also testified that DaSilva's acts served no purpose in furthering the interest of the company, that Plaintiff became "damaged," and that she reached "a stage of humiliation [from DaSilva's acts], particularly in terms of public criticism." Plaintiff testified that she became increasingly distraught over DaSilva's conduct, and his ridicule and disparagement of her in front of other company employees. Nora Lucero, a secretary for Johnson, testified that she had worked for DaSil-

va at various times, that he was a difficult person to work for, and that DaSilva was critical of Plaintiff. Paskewich confirmed that DaSilva denigrated Plaintiff in front of other company employees.

Dr. Susan B. Cave, a clinical psychologist, testified that Plaintiff was sensitive to criticism, had difficulty coping with stress, and that DaSilva's treatment of Plaintiff contributed to her having to be hospitalized. Dr. William B. Gerry, a psychiatrist, testified that Plaintiff believed DaSilva was intentionally attempting to hurt her. DaSilva testified that in November 1989 he was aware that Plaintiff had visited Johnson's health clinic, that he had received a report from the health unit, and that he knew she was experiencing work-related stress problems. Plaintiff presented evidence that despite this knowledge, DaSilva ridiculed and disparaged her before other company employees.

Plaintiff subsequently filed a complaint with the New Mexico Human Rights Commission, alleging that DaSilva had harassed and humiliated her. Prior to a hearing on the merits, the claim was dismissed without prejudice. Following her dismissal of that action, on December 7, 1987, Plaintiff filed a workers' compensation claim against Pan Am World Services and its insurance carrier.

Plaintiff's workers' compensation complaint alleged that she had received psychological injuries as a result of a workplace accident. The evidence underlying her workers' compensation claim was similar to that presented in the instant case. Following a trial on the merits, the workers' compensation judge found that the events testified to by Plaintiff constituted an accidental injury resulting in mental disability that arose in the course and scope of her employment, but that Plaintiff's complaint was not compensable under NMSA 1978, Section 52–1–24 (Repl.Pamp.1991) (effective until January 1, 1991) because Plaintiff's mental disability arose in connection with disciplinary, corrective, or job evaluation action by her employer. Plaintiff appealed this decision; however, while the appeal was pending, she withdrew her appeal.

On October 5, 1990, Plaintiff filed suit against Appellants, asserting alternative claims of intentional infliction of emotional distress and prima facie tort. The trial court dismissed the claim of intentional infliction of emotional distress but permitted the claim of prima facie tort to be submitted to the jury.

## DISCUSSION

### I. *Claim of Exclusivity*

Appellants, relying on the provisions of NMSA 1978, Section 52–1–9 (Repl. Pamp.1991), argue that the trial court erred in not determining that Plaintiff was barred from bringing an action for prima facie tort in the instant case because of the exclusivity provisions of the Workers' Compensation Act.

At the conclusion of Plaintiff's workers' compensation action against Johnson, the workers' compensation judge denied Plaintiff's claim, finding that although the events related by Plaintiff constituted a work-related mental disability, her mental illness was "not compensable [and falls] outside the definition of primary mental impairment as set forth in Section 52–1–24(B)," and that Plaintiff's psychological condition is the "direct and proximate result of disciplinary, corrective, job evaluation, and cessation of work actions."

■ Since Plaintiff's psychological disability was determined to have been incurred outside the provisions of Section 52–1–24 and to be noncompensable under the Workers' Compensation Act, we conclude that the exclusivity provision of the Workers' Compensation Act does not bar Plaintiff's tort claim. *See Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.) (exclusivity provision of Workers' Compensation Act does not bar common-law action for damages where injuries were intentionally inflicted), *cert. denied*, 115 N.M. 79, 847 P.2d 313 (1993); *Gallegos v. Chastain*, 95 N.M. 551, 553–54, 624 P.2d 60, 62–63 (Ct.App.1981) (employer may be subject to common-law tort action outside exclusivity provision of Workers' Compensation Act where intent to injure is shown to exist); *cf. Cruz v. Liberty Mut. Ins. Co.*, 119 N.M. 301, 303, 889 P.2d 1223, 1225 (1995) (observing that after issuance of decision in *Russell*,

legislature amended Workers' Compensation Act to provide remedy for bad-faith practices; hence, Act provides exclusive remedy for bad-faith claims); *Russell v. Protective Ins. Co.*, 107 N.M. 9, 11–12, 751 P.2d 693, 695–96 (1988) (action of worker against insurer alleging bad-faith refusal to pay workers' compensation benefits not barred by exclusivity provision of Workers' Compensation Act). *See generally* 2A Arthur Larson, *The Law of Workmen's Compensation* § 65.40 (1993).

■ Because Plaintiff both alleged and presented evidence showing that the events detailed in her complaint were intentionally done by DaSilva, we conclude that her cause of action asserting that Appellants committed a prima facie tort are not restricted under the circumstances presented here by the exclusivity provision of the Workers' Compensation Act.

### II. *Claim of Prima Facie Tort*

■ Appellants next argue that even if Plaintiff's action for prima facie tort is not barred by the exclusivity provision of the Workers' Compensation Act, nevertheless, the trial court erred in determining that the acts relied upon by Plaintiff survived the balancing test articulated in *Schmitz* so as to permit the submission of a prima facie tort claim to the jury.

In *Schmitz* our Supreme Court held that the elements of a prima facie tort are: (1) commission of an intentional lawful act, (2) the act is conducted with intent to injure Plaintiff, (3) the act resulted in injury to Plaintiff, and (4) the act is without social or economic justification or has insufficient justification. *Id.* at 394, 785 P.2d at 734; *see also* SCRA 1986, 13–1631 (Repl.1991). The Court in *Schmitz,* subject to certain refinements, adopted the balancing test set out in Restatement (Second) of Torts Section 870 (1977) as a means of determining whether the acts or omissions complained of by the plaintiff are subject to judicial relief as a prima facie tort. *Schmitz,* 109 N.M. at 394–95, 785 P.2d at 734–35; *see also Porter v. Crawford & Co.*, 611 S.W.2d 265, 272 (Mo.Ct. App.1980) (recognizing Restatement balanc-

ing test as guide for determining actionability of claim for prima facie tort).

■ In reviewing Appellants' claim that the trial court erred in submitting Plaintiff's prima facie tort claim to the jury, we apply the same balancing test utilized by the trial court to analyze whether the conduct in question justifies submission to the fact finder. In applying the balancing test outlined in *Schmitz,* we find the following comment set forth in the Restatement (Second) of Torts Section 870 comment k (1979) instructive:

> It is the function of the judge to engage in the process of applying the factors listed above in balancing the interests to determine whether tort liability will exist for the type of injury that the defendant has imposed on the plaintiff and what privileges will apply. It is the province of the jury to apply the rules and standards laid down by the judge to the facts that it finds to exist.

Our Supreme Court in *Schmitz* also cited with approval *Lundberg v. Prudential Insurance Co.*, 661 S.W.2d 667, 671 (Mo.Ct.App. 1983) (balancing test is means by which trial and *appellate courts* guard against unjust exploitation of prima facie tort). *See also Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42, 54–55 (Mo.Ct.App. 1985) (recognizing duty of appellate court to independently conduct balancing of the parties' interests). In performing the balancing test, however, the reviewing court does not reweigh the evidence presented before the trial court. *See Kiphart v. Community Fed. Sav. & Loan Ass'n,* 729 S.W.2d 510, 515 (Mo.Ct.App.1987).

■ The balancing approach is necessary because not every intentionally caused harm gives rise to an actionable tort. *Schmitz,* 109 N.M. at 394, 785 P.2d at 734; *see also Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546, 553 (Mo.Ct.App.1983) (an action for prima facie tort should not become a "catch-all" alternative for every action that cannot stand on its own legs); Restatement, *supra,* § 870 cmt. e (even where harm is found to have been intentionally caused, not every intentionally caused harm is subject to remediation in tort).

In *Schmitz* our Supreme Court quoted from Restatement, *supra*, Section 870 comment e, and stated that "the activity complained of [must be] balanced against its justification and the severity of the injury, weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances." *Schmitz*, 109 N.M. at 394, 785 P.2d at 734. In balancing the above factors, the analytical process is further broken down by the requirement that the court consider: " '(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor[,] and (4) the actor's motive.' " *Id.* at 395, 785 P.2d at 735 (quoting Restatement, *supra*, Section 870 cmt. e). In independently balancing the factors outlined above, we are mindful of the admonition in *Schmitz* that the balancing process must not be applied so loosely so as to "subvert the purpose of prima facie tort by eliminating the element requiring that a defendant [must have] intended injury to the plaintiff." *Id.* at 398, 785 P.2d at 738.

After applying the balancing process approved by our Supreme Court in *Schmitz*, we conclude that Plaintiff's prima facie tort claim, under the circumstances presented here, passed the threshold of a submissible prima facie tort. We balance the factors as follows:

(a) *Nature and Seriousness of Harm*

The record supports Plaintiff's claim that the acts of DaSilva subjected her to significant mental distress, that he knew or reasonably should have known of her emotional distress and sensitivity, that he followed a course of ridiculing and demeaning her before other employees, and creating a hostile work environment. In applying the balancing process, evidence of "physical, concrete harm is weighed more heavily than emotional ... harm." *Schmitz*, 109 N.M. at 399, 785 P.2d at 739. As observed in comment e of the Restatement, *supra*, Section 870: "Recovery is ... limited to those cases in which the plaintiff's harm is of such a nature and seriousness that legal redress is appropriate. The requirement that the actor's conduct be both culpable (in general) and unjustifiable (under the circumstances) emphasizes the dual nature of the determination." The authors of Restatement, *supra*, Section 870 comment f, further caution:

The significance of emotional harm varies considerably depending largely upon its severity. Indeed, in all cases, the severity of the harm is an important consideration, and a serious harm to an interest less deserving of protection may be a more important factor in finding liability than a slighter harm to a more significant interest.

Our review of the record indicates the existence of evidence from which the jury could reasonably find that the acts of DaSilva subjected Plaintiff to significant mental harm. As a result of DaSilva's acts, Plaintiff suffered acute mental distress sufficient to require her hospitalization for an extended period and to necessitate continuing professional care and treatment. After leaving work, Plaintiff had several heated arguments with family members. Although she had never before struck one of her children, she struck one of her daughters and felt like she lost control and might not stop hitting her. Her daughters ran out of the home and refused to return. When Plaintiff's husband came home, she quarreled with him also. The next day, Plaintiff checked herself into a mental health facility where she was hospitalized for two weeks. When Plaintiff entered the hospital, she was in a very fearful, extremely depressed, and agitated state.

One of Plaintiff's treating physicians testified that when Plaintiff was hospitalized she had clear suicidal tendencies and that had she not remained in the hospital voluntarily, he would have sought a court order to keep her hospitalized. Though somewhat improved, Plaintiff was shown to be still suffering mental distress to a measurable degree at the time this case came to trial in 1991, four years after the incident. Plaintiff presented ample testimony establishing a causal link between her severe emotional problems and the events at work. Plaintiff testified that because of DaSilva's conduct she had difficulty going back to work for anyone else

and that she was still trying to build up her confidence so that she could return to work. We balance the first factor in favor of Plaintiff.

### (b) *Nature and Significance of Actor's Conduct*

 The second evaluation factor is of primary concern in determining the existence of justification for Appellants' acts. The issue of justification, or excusability, focuses primarily on the question of whether the defendant's conduct was privileged. Restatement, *supra*, § 870 cmt. e. When considering this evaluation factor, we must first determine the existence of a justification for Appellants' acts. We must consider whether, in the absence of a privilege, a defendant's conduct was inexcusable in the eyes of society and the law given the relationship of the parties or the circumstances surrounding the act. *Id.*

Plaintiff presented evidence showing a series of acts on the part of DaSilva concerning his treatment of her as an employee. The incidents can be briefly summarized as follows:

(1) DaSilva's conduct concerning Plaintiff's handling of the repair of the photocopy machine.

(2) DaSilva's delay in signing Plaintiff's request for additional vacation leave during the Thanksgiving holiday week.

(3) The December 3, 1987, conference with Plaintiff.

(4) DaSilva's request to company officials that Plaintiff be transferred because her presence was making him physically ill.

(5) DaSilva's actions in criticizing and belittling Plaintiff to other office staff.

(6) DaSilva's feigning illness when he saw Plaintiff in the office.

The above acts, when considered collectively and viewed in a light most favorable to the verdict reached below, provided an evidentiary basis from which the jury could properly determine that DaSilva's conduct toward Plaintiff furthered no legitimate company or societal interests and were purposely intended to harm Plaintiff.

We balance this factor in favor of Plaintiff.

### (c) *The Character of the Means Used*

 The analysis here follows closely the discussion of the second factor above. Where Plaintiff's evidence satisfies other balancing factors, we think that acts which the fact finder could reasonably conclude are offensive to reasonable community standards of right conduct and which are intended to cause harm are properly submitted to the fact finder for evaluation of Plaintiff's prima facie tort claim. *Schmitz*, 109 N.M. at 399, 785 P.2d at 739. While mere lack of tact, rudeness, or insensitivity of an employer in pursuit of a legitimate business purpose will not give rise to an action for a prima facie tort, here, however, the jury could reasonably conclude that Appellants' acts transcended mere lack of tact and insensitivity and fell outside the ambit of legitimate employer behavior, because DaSilva, despite his knowledge of her stressed condition, continued to use his power and position as Plaintiff's supervisor to humiliate and demean her before other employees. *Cf. Phifer v. Herbert*, 115 N.M. 135, 139–40, 848 P.2d 5, 9–10 (Ct.App.1993) (observing that extreme and outrageous behavior is subject to liability if it exceeds all possible bounds of decency, is atrocious, and is intolerable in a civilized community); *Dominguez v. Stone*, 97 N.M. 211, 215, 638 P.2d 423, 427 (Ct.App.1981) (defendant may be held responsible for infliction of severe emotional distress where he had knowledge of plaintiff's peculiar susceptibility).

We balance this factor in favor of Plaintiff.

### (d) *Motive*

Our Supreme Court has held that to establish a prima facie tort, a plaintiff must prove that the tort-feasor acted maliciously with the intent to cause the injury and without sufficient justification. *See Schmitz*, 109 N.M. at 395, 785 P.2d at 735; *see also Aetna Fin. Co. v. Gaither*, 118 N.M. 246, 249, 880 P.2d 857, 860 (1994) ("An intentional tort is by definition an *unlawful* act."). *See generally* W.E. Shipley, Annotation, *Comment*

*Note.—Prima Facie Tort,* 16 A.L.R.3d 1191, 1220 (1967); James P. Bieg, *Prima Facie Tort Comes to New Mexico: A Summary of Prima Facie Tort Law,* 21 N.M.L.Rev. 327 (1991).

In *Schmitz* our Supreme Court, however, emphasized that this element was not intended to be applied in a formulaic manner so as to require that proof of intent to harm be the sole motivation for the action or by allowing mere recital of "some economic benefit" to defeat the policy behind its recognition of prima facie tort. *Id.* at 395, 785 P.2d at 735. *Schmitz* held that while "the act must be committed with the intent to injure plaintiff, or, in other words, without justification, ... it need not be shown that the act was solely intended to injure plaintiff." *Id.*

■ In evaluating Appellants' acts, intent may generally be inferred from the conduct itself. *United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 117–18, 597 P.2d 290, 302–03, *cert. denied,* 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979). The same considerations which led us to balance the second and third factors in favor of Plaintiff are at work here. We conclude that the jury could reasonably find that DaSilva's acts of using his position as a supervisor to mock and disparage Plaintiff in front of her co-workers was done maliciously and without any reasonable justification.

In sum, we conclude that there was sufficient evidence to support the jury's verdict, and that Plaintiff made a sufficient showing of the elements of a prima facie tort under the balancing calculus required by *Schmitz* to allow submission of the matter to the jury for final determination.

We balance this factor in favor of Plaintiff.

III. *Relationship to Other Causes of Action*

Appellants urge the theory that prima facie tort was not available to Plaintiff because, apart from a claim for workers' compensation, other causes of actions were applicable, i.e. violation of the Human Rights Act, NMSA 1978, Sections 28–1–1 to –7 and 28–1–9 to –14 (Repl.Pamp.1991 & Cum.Supp.1994), and the intentional infliction of emotional distress. We have previously disposed of Appellants' claim that Plaintiff's action here was barred by the exclusivity of the Workers' Compensation Act.

■ In *Phifer* this Court held that the Human Rights Act did not preclude the plaintiff from pursuing common-law tort remedies arising from conduct that could be actionable under the Human Rights Act. In *Phifer* the plaintiff alleged sexually harassing conduct against her by the defendants. The plaintiff had not filed charges with the Equal Employment Opportunity Commission or the New Mexico Human Rights Commission before filing her action in district court, and her time for doing so had elapsed. The trial court dismissed on the theory that New Mexico does not recognize a tort of sexual harassment. This Court disagreed and held: "[T]he requirement that administrative remedies for employment discrimination claims recognized by statute be exhausted does not prevent an employee from filing a complaint based on a common law tort without first resorting to such administrative remedies." *Id.,* 115 N.M. at 138; 848 P.2d at 8; *see also Gandy v. Wal–Mart Stores, Inc.,* 117 N.M. 441, 444, 872 P.2d 859, 862 (1994) (remedy provided by Human Rights Act for retaliatory discharge not exclusive, and failure to exhaust remedy under Human Rights Act does not bar tort action). We see no reason to apply a different rule here.

■ Appellants' contention that only the nominate tort of intentional infliction of emotional distress was available to Plaintiff is more problematic. We conclude, however, that the jury could properly determine that DaSilva, despite being aware of Plaintiff's stressed and somewhat fragile, emotional and mental condition, used his superior position as Plaintiff's supervisor to subject her to unjustified public harassment, ridicule, and humiliation under circumstances that the jury could conclude were designed to cause severe emotional harm.

Under such circumstances, we do not believe that this is a situation whereby an action for prima facie tort can be said to overlap the limitations of a traditional tort, or more specifically, the tort of intentional in-

fliction of emotional distress. An action for intentional infliction of emotional distress may properly be prosecuted where a plaintiff establishes that a defendant's conduct was extreme and outrageous, the wrongful acts were intentional or reckless in nature, and as a result of such conduct the plaintiff suffered severe emotional distress. SCRA 1986, 13–1628 (Repl.1991).

In contrast, an action for prima facie tort exists where the defendant is shown to have intentionally done an act or series of acts, or failed to act; the defendant intends that his acts or failure to act would cause harm to the plaintiff; the defendant's acts or failure to act proximately resulted in harm to the plaintiff; and the defendant's conduct was without justification. SCRA 13–1631; *Schmitz,* 109 N.M. at 395, 785 P.2d at 735 (adopting Missouri's analysis for test of actionability of prima facie tort claim, subject to other refinements); *see also National Nutritional Foods Ass'n v. Whelan,* 492 F.Supp. 374, 382–83 (S.D.N.Y.1980) (prima facie tort may not be used to simply circumvent established requirements of claim for defamation and libel).

Under the record before us, we conclude that Plaintiff's claim of prima facie tort falls outside the perimeters of an action for intentional infliction of emotional distress because Plaintiff presented evidence from which the jury could reasonably conclude that DaSilva, in his role as Plaintiff's supervisor, knew of her sensitivity, and nevertheless embarked on a course of conduct which was intended to humiliate and belittle Plaintiff and create a hostile work environment for Plaintiff, thereby forcing her to resign or seek a transfer.

### IV. *Sufficiency of the Evidence*

 Examination of the record reveals the existence of substantial evidence from which the jury could properly conclude that DaSilva's treatment of Plaintiff and his acts of subjecting Plaintiff to ridicule and disparagement to other company employees amounted to a form of deliberate, intentional, and unjustified harassment, proximately causing Plaintiff's hospitalization and mental condition. Evidence was presented supporting each element of Plaintiff's prima facie

tort claim. Although Appellants point to other evidence, including DaSilva's own testimony, which they contend would explain or justify DaSilva's treatment or conduct toward Plaintiff, it is the province of the jury to determine the credibility of the witnesses, reconcile inconsistent or contradictory testimony, and determine where the truth lies. *Ranchers Exploration & Dev. Corp. v. Miles,* 102 N.M. 387, 390, 696 P.2d 475, 478 (1985). The fact that there may be other evidence, which, if accepted by the fact finder, would have supported a different verdict does not permit a reviewing court to reweigh the evidence. *Westbrook v. Lea Gen. Hosp.,* 85 N.M. 191, 195, 510 P.2d 515, 519 (Ct.App.), *certs. denied,* 85 N.M. 228, 511 P.2d 554 (1973).

### CONCLUSION

The judgment entered below is affirmed.

IT IS SO ORDERED.

ALARID and BUSTAMANTE, JJ., concur.