This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40189

**SHEILA HOAG, Individually and on behalf of the Estate of JAMES HOAG, Deceased,**

Plaintiff-Appellee,

v.

**MOHAMED ASWAD, MD; and MOHAMED ASWAD, PC,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jarod K. Hofacket, District Court Judge**

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Johnston
Albuquerque, NM

Poulos & Coates, LLP
Victor F. Poulos
Greig Coates
Andrew Cavazos
Las Cruces, NM

for Appellee

Hinkle Shanor LLP
William P. Slattery
Dana S. Hardy
Zachary T. Taylor
Santa Fe, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellants

Integration Group, Inc.
Barry J. Berenberg
Albuquerque, NM

R. Alfred Walker
Santa Fe, NM

for Amicus Curiae Office of Superintendent of Insurance

Martinez, Hart, Sanchez, & Romero, P.C.
Julio C. Romero
Kelly Stout Sanchez
F. Michael Hart
Albuquerque, NM

Atkins & Walker Law, P.A.
Samuel H. Walker
Albuquerque, NM

NMTLA, Chair of Amicus Committee
David J. Stout
Albuquerque, NM

for Amicus Curiae NMTLA

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     Defendant Mohamed Aswad, MD, appeals the district court's final judgment and related interim orders following a jury trial in a medical malpractice action. The trial culminated in a determination of liability and an award of damages against Defendant. We affirm.

**{2}**     Plaintiff Sheila Hoag, individually and as personal representative of the estate of her husband, James Hoag, deceased, filed a complaint against Defendant alleging, in pertinent part, negligence, fraud, and lack of informed consent in Defendant's care of Mr. Hoag, who was diagnosed with cancer in 2015 and ultimately passed away therefrom in 2020. In the complaint, Plaintiff claimed that Defendant negligently and fraudulently mismanaged the treatment of Mr. Hoag in a manner that caused Mr. Hoag's cancer to progress to an incurable stage resulting in death. Following a trial, during which Defendant stipulated that he breached the standard of care, the jury found that Defendant's negligence caused Plaintiff's claimed injury and damages and awarded Plaintiff damages totaling $1,344,821.10. The jury found no failure by Defendant to

obtain Mr. Hoag's informed consent and likewise did not find that Defendant committed fraud in his care and treatment of Mr. Hoag.

**{3}** Defendant raises the following arguments on appeal: (1) the district court erred by limiting Defendant's closing arguments regarding evidence related to causation; (2) the district court's manner of instructing the jury on causation constitutes reversible error; (3) the damages awarded for medical expenses were improperly based on the amounts billed by Mr. Hoag's health care providers rather than the amounts paid by Mr. Hoag's insurance, and the district court erred in its application of the collateral source rule; and (4) punitive damages were awarded in error. We affirm, addressing these arguments in turn.[1]

## I.      Limitations on Closing Arguments

**{4}** As to his first argument, Defendant argues that "the trial court erred as a matter of law in effectively directing a verdict for Plaintiff on the issue of causation," asserting that the district court "preclude[ed Defendant] from presenting any defense as to the element of causation." Plaintiff moved for a directed verdict as to medical causation, and while the district court denied such motion, it directed counsel to limit closing arguments in relation to the specific stage of Mr. Hoag's cancer in 2015. Defendant contends that such limitation of closing arguments rendered him without the ability to present evidence or argument regarding causation, stating that the district court's "last-minute decision" to limit closing arguments "usurped the role of the jury" and "crippled" his defense in a manner contrary to law. At the root of this argument is Defendant's claim—also argued at trial—that the jury could reasonably infer based on proffered testimony that Mr. Hoag's cancer had already advanced to an incurable stage—Stage IV—by the time Defendant's treatment of Mr. Hoag began, and, therefore, any deviation in the standard of care by Defendant could not have caused the progression in Mr. Hoag's cancer that ultimately led to his death.

**{5}** Before turning to our analysis of this issue, we note that although Defendant contends that the district court hindered him from presenting argument as to causation, the record before us demonstrates that Defendant was unable to present testimony by an expert witness in oncology and instead relied solely on Dr. William Zimmer to provide expert testimony as a diagnostic radiologist. The pertinent portion of Dr. Zimmer's

---

[1]We take this opportunity to reiterate certain core principles of appellate review. First, in any appeal before this Court, "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. as Tr. of Murtagh Nev. Tr. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. Further, under Rule 16-303 NMRA, attorneys have an obligation of candor to this Court, which includes refraining from knowingly "mak[ing] a false statement of fact or law to a tribunal." We reiterate these fundamental principles in light of deficiencies in the briefing by Defendant's counsel, including mischaracterizations of the record, misquoting of the district court, and selective citation to both the record and authority in a manner that obfuscates relevant facts and law. We emphasize to Defendant's counsel that this Court relies upon the candor of appellate practitioners and that misrepresentations thereby not only result in flawed briefing, thus hindering our ability to accurately resolve the appeals before us, but also present unnecessary burdens on judicial resources. *See* Rule 16-303; *see also Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining that inadequate briefing can create both "a strain on judicial resources and a substantial risk of error").

testimony—which, we note, drew no objections from Plaintiff—related to his independent review of diagnostic imaging and reporting from two CT scans of Mr. Hoag's chest that took place in 2015 and 2017, respectively. Dr. Zimmer, who reviewed and interpreted the 2015 and the 2017 scans in tandem, described the presence of "small nodules" in the 2015 imaging and, based on that review, opined, to a reasonable degree of scientific certainty, that such nodules grew into the tumors ultimately identified in Mr. Hoag's lungs in 2017, thus indicating that Mr. Hoag had developed metastatic disease and his cancer had progressed to Stage IV in 2015.

{6}     Following a lengthy exchange between the parties and the district court as to Plaintiff's motion for a directed verdict, the district court denied the motion but, in doing so, clarified its reluctance to ask the jury to speculate as to a medical diagnosis not testified to by expert witnesses and "caution[ed counsel] to not be tempted to invite the jury to conclude that [Mr. Hoag's cancer] was metastatic or Stage [IV]" in 2015. In its order denying Plaintiff's motion for directed verdict, the district court reiterated and expanded on its reasoning for limiting closing arguments, emphasizing the conflicting evidence the jury heard regarding the status of Mr. Hoag's cancer in 2015 as well as the lack of either (1) additional expert testimony to "bring home" the implications of Dr. Zimmer's testimony, or (2) any objection to Dr. Zimmer's testimony by Plaintiff.

{7}     Having reviewed the course of proceedings below as they relate to this issue, we discern the relevant questions before us to be whether the district court erred in limiting closing arguments, and secondarily, whether the district court erred in implicitly limiting Dr. Zimmer's testimony or Defendant's reliance thereon. The district court is "afforded broad discretion in managing closing arguments," and we review assertions of error on such basis for abuse of discretion, which we will find only "in the most exceptional circumstances." *State v. Dominguez*, 2014-NMCA-064, ¶ 22, 327 P.3d 1092 (internal quotation marks and citation omitted). Likewise, "the district court's rulings as to admissibility of expert testimony are reviewed for an abuse of discretion." *Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 47, 384 P.3d 1098. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

{8}     We rely on the jury to render factual determinations when faced with conflicting evidence. *See Beavers v. Johnson Controls World Servs., Inc.*, 1995-NMCA-070, ¶ 43, 120 N.M. 343, 901 P.2d 761 ("[I]t is the province of the jury to determine the credibility of the witnesses, reconcile inconsistent or contradictory testimony, and determine where the truth lies."). Here, the jury heard conflicting evidence as to whether Mr. Hoag had Stage IV cancer in 2015. However, as the district court noted, such conflicting evidence appears to have prompted the district court to act within its discretion as a gatekeeper and ensure that Dr. Zimmer's testimony was reliable, relevant, and helpful to the jury in understanding the evidence and determining the facts in issue. *See Christopherson*, 2016-NMCA-097, ¶ 48 ("[T]he district court is required to act as a 'gatekeeper' to ensure that an expert's testimony rests on both a reliable foundation and is relevant to the task at hand so that speculative and unfounded opinions do not reach the jury." (internal

quotation marks and citation omitted)); *see also* Rule 11-702 NMRA (providing that testimony by an expert witness must "help the trier of fact to understand the evidence or to determine a fact in issue").

{9}     Indeed, the district court stated in its order denying Plaintiff's motion for directed verdict that without further expert testimony by an oncologist, Dr. Zimmer's diagnostic opinions should not have been admitted into evidence in the first place because such opinions were "outside the scope of his expertise," and the existence of *nodules*—which are expected to exist in Stage III cancer patients and indeed are the very targets of the treatment protocol for Stage III—is not the same as the existence of *tumors*, which would be plainly indicative of Stage IV. Plaintiff did not object to Dr. Zimmer's testimony during trial, nor did Plaintiff file any motions to limit such testimony—likely because, as noted by the district court, Plaintiff did not depose Dr. Zimmer ahead of trial. As such, the jury heard Dr. Zimmer's testimony in full and only Defendant's closing arguments as to such testimony—which is not evidence, unlike the testimony, itself—was limited by the district court. *See Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 25, 141 N.M. 808, 161 P.3d 853 ("Statements made during closing arguments are not evidence."); *see also* UJI 13-2007 NMRA (explaining that although a jury may give weight to counsel's closing arguments, such are not to be considered as evidence).

{10}     Defendants' arguments do not persuade us that the district court's limitation on closing arguments in this case was an abuse of discretion. It appears that certain aspects of the procedural background in this case—such as Defendant's inability to present his intended expert oncologist and Plaintiff's complete lack of objection as to Dr. Zimmer's testimony—prompted the district court to exercise its discretion to limit closing arguments and, at least in some respects, to limit reliance on Dr. Zimmer's testimony in a gatekeeping capacity. Having carefully reviewed the parties' briefing, the record in this case, and the district court's reasoning as stated in its order denying Plaintiff's motion for directed verdict, we do not perceive the district court's limitation on closing arguments to be contrary to the logical conclusions demanded by the facts and circumstances of this case, *Benz*, 2013-NMCA-111, ¶ 11, and we therefore conclude that such limitation does not rise to the level of an abuse of discretion.

## II.     Jury Instruction Regarding Causation

{11}     Defendant next argues that the district court failed to properly instruct the jury on the burden of proof as to causation, resulting in fundamental error. Specifically, Defendant contends that the district court provided the jury with a "corrupted form of UJI 13-302B NMRA that omitted [P]laintiff's burden of proving causation." UJI 13-302B, in its unaltered form, sets forth the following framework:

> To establish _____ (*theory of recovery by name, e.g., negligence*) on the part of [a] defendant(s), the plaintiff(s) [has] [have] the burden of proving [at least one of] [each of] the following: _____.
>
> . . . .

The plaintiff(s) [has] [have] the burden of proving that such _____ (*theory of recovery by name*) was a cause of the [injuries and] damages.

Defendant asserts that the district court failed to instruct the jury as to the second clause of the UJI and, in turn, misled the jury and prejudiced Defendant. The parties appear to dispute whether Defendant's argument on this issue is preserved, but even assuming without deciding that it is, we are unpersuaded by Defendant's assertions of error on this issue.

**{12}** Ultimately, "[i]n reviewing alleged errors relating to jury instructions, this Court will consider whether all of the instructions, when read and considered together, fairly present the issues and the law applicable thereto." *Kestenbaum v. Pennzoil Co.*, 1988-NMSC-092, ¶ 21, 108 N.M. 20, 766 P.2d 280. Here, the district court's provision to the jury of UJI 13-302B was indeed incomplete, but only insomuch as the court's articulation of the instruction did not reflect the exact wording of the UJI as it appears in our Rules of Civil Procedure. This does not, however, require us to assign error to the district court's instruction of the jury. Although district courts are compelled by the Rules of Civil Procedure to use the applicable UJI when instructing a jury, *see* Rule 1-051(D) NMRA, the failure to use a particular UJI does not necessarily rise to the level of fundamental or otherwise reversible error. *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775; *see also Jewell v. Seidenberg*, 1970-NMSC-139, ¶ 8, 82 N.M. 120, 477 P.2d 296 ("We have . . . held that failure to comply with a rule of [c]ivil [p]rocedure does not constitute reversible error unless prejudice is shown."). Further, "[a] civil case will not be reversed due to error in jury instructions unless the result is fundamentally unjust." *Salopek v. Friedman*, 2013-NMCA-087, ¶ 16, 308 P.3d 139 (internal quotation marks and citation omitted), *overruled on other grounds by Siebert v. Okun*, 2021-NMSC-016, 485 P.3d 1265. Indeed, without some showing of prejudice, "we will not reverse a jury verdict in a civil trial as a result of error in the instructions unless we determine the error is inconsistent with substantial justice or affects the substantial rights of the parties." *Lopez v. Devon Energy Prod. Co., L.P.*, 2020-NMCA-033, ¶ 39, 468 P.3d 887 (internal quotation marks and citations omitted).

**{13}** Here, Defendant does not provide evidence of prejudice—beyond mere assertion thereof—and we struggle to find any demonstration of prejudice considering (1) the district court's repeated clarifications that Plaintiff had the burden of proof as to causation, which we perceive to have effectively conveyed the substance of the instruction; and (2) Defendant's apparent failures to object or restate an objection to the instruction, submit appropriate corrections to the instruction as prompted by the district court, or otherwise correct the district court's provision of an incomplete version of UJI 13-302B. *See Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 31, 135 N.M. 423, 89 P.3d 672; *see also Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334 ("A party who has contributed, at least in part, to perceived shortcomings in a trial court's ruling should hardly be heard to complain about those shortcomings on appeal."). To whatever extent it may be considered error for the district court to have articulated the substance of UJI 13-302B in a manner that did not strictly adhere to the drafted rule, we deem any such error to be harmless in light of the district court's

numerous instructions emphasizing the Plaintiff's burden of proof as to causation. *See Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115. We therefore conclude that the district court's instructions to the jury in this case fairly presented the issues of the case and applicable law and discern no reversible error as to this issue.

### III.    Defendant's Challenge to the Jury's Award of Medical Expenses

{14}    Defendant challenges the jury's award of medical expenses, arguing that the district court erred as a matter of law in "barring [him] from introducing evidence of the actual value of the medical expenses incurred by [Mr. Hoag], as opposed to the nominal amounts shown on providers' billing statements" that "inflate" the actual expenses. Defendant contends that the jury's award of $1.6 million for medical expenses was erroneous, as such award should have been limited to the amount "actually paid out in full and complete satisfaction of real charges"—in this case, $192,000. This argument centers on Defendant's assertion that the district court "applied the collateral source rule as if this were an ordinary tort case, without acknowledging that the Patient Compensation Fund's liability for the medical expenses above the [provider's personal liability] cap necessitates use of the actual provider charges, not the nominal ones." In other words, according to Defendant, the district court should have limited damages to the "actual value" of the medical expenses incurred—meaning the amounts insurance companies paid providers for performed medical services—rather than the "inflated nominal charges that no one actually pays"—meaning the amounts that appear on providers' billing statements.

{15}    Defendant's argument on this issue is presented as a novel question requiring de novo review of both the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2023), and the collateral source rule, which "is an exception to the general prohibition of double recovery," and "provides that compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Gonzagowski v. Steamatic of Albuquerque, Inc.*, 2023-NMSC-016, ¶ 19, 533 P.3d 1068 (alterations, internal quotation marks, and citations omitted). We note, however, that Defendant's framing of this issue hinges on an unsupported assertion that "the MMA's purpose [is to] compensate patients for *actual medical expenses incurred* based on [the] limited public fund" that is the Patient Compensation Fund (PCF). (Emphasis added.) Indeed, in his briefing, Defendant claims—without citing any supportive authority—that the MMA contemplates a distinction between what Defendant refers to as the "actual value" of medical expenses versus "inflated nominal charges." This distinction, however, is not reflected in the MMA.

{16}    Defendant cites to the 2022 version of NMSA 1978, Section 41-5-6(G) (2021, amended 2023)—enacted days before Defendant filed his notice of appeal—as support for the proposition that the MMA is intended to provide for payments by the PCF only of "the value of [accrued] medical care and related benefits." In such articulation, Defendant fails to include the statute's complete sentence, which reads in full: "The value of accrued medical care and related benefits *shall not be subject to any*

*limitation.*" *Id.* (emphasis added). This same principle was reflected in the version of the statute in effect during the below proceedings and remains in the current version. *See* § 41-5-6(B) (stating that "[t]he value of accrued medical care and related benefits shall not be subject to the six hundred thousand dollar ($600,000) limitation" set forth in Section 41-5-6(A)); *see also* § 41-5-6(H) ("The value of accrued medical care and related benefits shall not be subject to any limitation."). The plain language of the MMA explicitly rejects Defendant's argument that the value of a plaintiff's medical care should be limited based on whether it arises from "actual" or "nominal" charges. *See Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787 ("Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent."); *see also Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 ("[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). It is unclear to this Court whether Defendant's counsel believes there to be an alternate interpretation of the unambiguous terms of Section 41-5-6(G) (2022), or if Defendant's counsel was merely counting on this Court to take them at their word without confirming the language of the quoted statute.

{17}   Moreover, on the merits of Defendant's assertions that the district court erred in its application of the collateral source rule, our appellate courts have long recognized that a plaintiff's damages are not to be limited even where portions of the recovered medical expenses have been paid for by an insurer. *See Bailey v. Jeffries-Eaves, Inc.*, 1966-NMSC-094, ¶ 45, 76 N.M. 278, 414 P.2d 503 ("A plaintiff may recover medical expenses . . . incurred by a defendant's negligence, even though [the] plaintiff may have had such items paid for by insurance or otherwise. Such a payment should not diminish the amount of damages recovered by [a] plaintiff . . . in [an] action based on [a] defendant's negligence."); *see also Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op., Inc.*, 2013-NMSC-017, ¶¶ 48, 50, 301 P.3d 387 ("The classic statement of the collateral source rule is that compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer. In other words, if a plaintiff is compensated for [their] injuries by any source unaffiliated with the defendant," including an insurer, "the defendant must *still* pay damages, even if this means that the plaintiff recovers twice." (alterations, internal quotation marks, and citation omitted)).

{18}   We further emphasize that the policy-based arguments Defendant presents regarding this issue are unpersuasive. Defendant contends that payments from the PCF akin to those necessitated by the damages awarded in this case would deplete the PCF and are thus contrary to the spirit of the MMA. Such contention, however, is merely an extension of Defendant's meritless argument regarding the use and value of "actual" versus "nominal" in determining awards of damages. Indeed, until the Legislature makes clear through future amendments an intention to distinguish, classify, or otherwise limit the value of accrued medical care under Section 41-5-6, we decline to read into the MMA any meaning not reflected in the plain and unambiguous language of the statute and further decline to speculate as to the solvency and longevity of the PCF.

**IV. Defendant's Challenge to the Jury's Award of Punitive Damages**

**{19}** Defendant argues that the jury's award of $1,000,000 in punitive damages is not supported by the facts of the case.[2] Specifically, Defendant asserts that punitive damages are not available in this case because punitive damages cannot be sustained solely on the negligence claim for which the jury found Defendant liable.

**{20}** "New Mexico law allows a plaintiff who establishes a cause of action in law to recover punitive damages as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, oppressive, or fraudulent and in bad faith." *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 27, 317 P.3d 856 (internal quotation marks and citation omitted). Indeed, in contrast to Defendant's assertions that a jury's finding of negligence cannot on its own support a punitive damages award, it is precisely such a finding—in tandem with an award of compensatory damages—that allows a jury to consider awarding punitive damages. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 21, 310 P.3d 611 ("[N]ominal and punitive damages are not available in a negligence action absent proof of actual damages."); *see also* UJI 13-1827 NMRA ("[The jury] may consider punitive damages only if [it] find[s] that [the party making the claim] should recover compensatory . . . damages.").

**{21}** Here, the jury was instructed that, assuming it found that Plaintiff should recover compensatory damages, it "may award punitive damages against" Defendant if it found that the conduct of Defendant "was willful, reckless, wanton, or fraudulent." *See* UJI 13-1827. "Wanton conduct" was defined for the jury as "the doing of an act of utter indifference to, or conscious disregard for a person's life and safety." *See id.* We presume that the jury followed these and other relevant instructions in finding that Defendant's acts were wanton. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 26, 145 N.M. 698, 213 P.3d 1127.

**{22}** Given the jury's explicit finding, as indicated on the special verdict form, that Defendant's conduct was wanton, we discern Defendant's argument on this issue to ultimately be a question of whether substantial evidence supports such a finding. *See Sunnyland Farms, Inc.*, 2013-NMSC-017, ¶ 41 ("We review the factual findings underpinning an award of punitive damages for substantial evidence."). In reviewing whether substantial evidence supports the jury's award of punitive damages, "[w]e cannot indulge in conjecture or speculation concerning the basis for the jury's award." *State ex rel. State Highway Comm'n v. Martinez*, 1970-NMSC-062, ¶ 16, 81 N.M. 442, 468 P.2d 413. "We defer to the jury's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence." *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 13, 143 N.M. 506, 177 P.3d 1080. Further, "[w]hen considering a substantial evidence claim . . . we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Bovee v. State Highway & Transp.*

---

[2]Defendant's argument in this regard is also premised on an assertion that the punitive damages awarded by the jury cannot be sustained were this Court to reverse the verdict below for any of the other reasons argued by Defendant. Because we affirm, we decline to further address this facet of Defendant's argument.

*Dep't*, 2003-NMCA-025, ¶ 17, 133 N.M. 519, 65 P.3d 254 (internal quotation marks and citation omitted).

**{23}** Here, the record amply supports the jury's finding that Defendant's conduct in treating Mr. Hoag was wanton. For example, as discussed above, Defendant testified that he first confirmed Mr. Hoag's Stage III diagnosis on September 3, 2015, but that at such time—despite never documenting or otherwise communicating as much— Defendant apparently already believed Mr. Hoag was under-staged at Stage III and suffering instead from Stage IV cancer. Further, the jury heard testimony that Defendant's treatment of Mr. Hoag did not include certain methods reserved for treatment of Stage IV colon cancer, despite Defendant's purported belief that Mr. Hoag already had Stage IV cancer. Defendant's testimony established as well that for patients diagnosed with Stage III cancer, a certain medication should be administered at specific dosage levels for no more than six months. Defendant, however, administered reduced dosage levels of this medication to Mr. Hoag over the course of thirteen months, which testimony indicated to be a deviation from accepted treatment practices.

**{24}** Indeed, the jury heard testimony that Defendant was unaware of dosage recommendations provided by the National Comprehensive Cancer Network (NCCN), the guidelines of which constitute the standard of care in oncology and dictate the administration of the above-referenced medication. Further, Defendant acknowledged that approximately 69 to 73 percent of Stage III colon cancer patients who receive "NCCN evidence-based care" without deviation therefrom were cured of their cancer. The jury heard additional testimony establishing that another medication administered to Mr. Hoag should be given via a 48-hour "continuous infusion," but Defendant "incorrectly" administered the medication to Mr. Hoag through a single injection. To the extent Defendant contends there to be evidence presented that could support a different finding by the jury, we decline to substitute our own judgment for that of the jury in reconciling contradictory evidence. *See Littell*, 2008-NMCA-012, ¶ 13; *Bovee*, 2003-NMCA-025, ¶ 17.

**{25}** Although we review this issue for substantial evidence, we note that the authorities upon which Defendant relies to support his argument on this issue are clearly distinguishable from the instant case. For example, Defendant cites *Sunwest Bank of Albuquerque, N.A. v. Daskalos*, 1995-NMCA-100, ¶¶ 8-10, 120 N.M. 637, 904 P.2d 1062, for the proposition that punitive damages shall be reversed without a finding of wrongful intent. In actuality, *Daskalos* relates to a nonjury trial in which the district court awarded punitive damages on an extortion claim filed by victims of forgery against a bank. *Id.* ¶ 1. This Court addressed the statutory requirements for extortion under NMSA 1978, Section 30-16-9 (1963)—namely the "wrongful intent" requirement therein—and reversed the district court's punitive damages award only because "there were no findings of fact by the [district] court of any wrongful or oppressive conduct or bad motive on the part of" the bank, as would be required by the statute. *Daskalos*, 1995-NMCA-100, ¶¶ 7-10. Indeed, this Court explained that it reversed the punitive damages award because "[i]t would be inappropriate for this Court to affirm based on findings of fact the [district] court did not make," on the actual claim at issue, *id.* ¶ 10,

and not—as Defendant argues here—because the punitive damages award, itself, was unsupported by a finding of wrongful intent.

**{26}** Similarly, Defendant cites *Paiz v. State Farm Fire & Casualty Co.*, 1994-NMSC-079, ¶¶ 25, 27, 118 N.M. 203, 880 P.2d 300, for the proposition that punitive damages cannot be awarded where a plaintiff fails to offer evidence of conscious wrongdoing such as ill will, malice, or evil motive. *Paiz* related to a breach of contract claim on which compensatory damages were awarded. *Id.* ¶ 24. There, our New Mexico Supreme Court explained that "[w]ith sparse exception, [the] Court consistently has held that an award of punitive damages in a breach-of-contract case must be predicated on a showing of bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party." *Id.* Indeed, the *Paiz* Court made clear that the required showing of "evil motive" or some other "culpable mental state" was particular to awarding punitive damages in breach of contract claims. *Id.* ¶¶ 24-25, 31-32; *see also Hinger v. Parker & Parsley Petroleum Co.*, 1995-NMCA-069, ¶ 49, 120 N.M. 430, 902 P.2d 1033 (explaining that the holding in *Paiz* was "limited to contracts"); *Walta v. Gallegos L. Firm, P.C.*, 2002-NMCA-015, ¶ 57, 131 N.M. 544, 40 P.3d 449 (applying the reasoning of *Paiz* to the specific context of breach of fiduciary duty claims and explaining that this Court "can conceive of breaches of fiduciary duty sufficient to support compensatory, but not punitive, damages").

**{27}** Lastly, Defendant cites *Behrens v. Gateway Court., LLC*, 2013-NMCA-097, ¶ 24, 311 P.3d 822, for the proposition that the conduct giving rise to a punitive damages claim must be the same conduct underlying the compensatory damages claim. We emphasize that while Defendant accurately relies on such principle from *Behrens*, no concern of such nature exists in this case as the jury's award of punitive damages was premised on the same conduct that gave rise to the negligence claim on which the jury awarded compensatory damages—that is, Defendant's substandard treatment of Mr. Hoag's cancer, which the jury apparently determined was done with "utter indifference to, or conscious disregard for [Mr. Hoag]'s life and safety." UJI 13-1827; *Kilgore*, 2009-NMCA-078, ¶ 26. Further, Defendant's assertions that the jury's award of punitive damages was only able to be supported by "character attacks" against Defendant are speculative and unfounded. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). There is no indication in the record that the jury relied on any facts related to the New Mexico Medical Board and FDA investigations of Defendant in making their findings and awarding damages in this case. We hold there to be no error by the district court in awarding punitive damages as determined by the jury.

**CONCLUSION**

**{28}** For the reasons stated above, we affirm.

**{29}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**